Robert J. MacDonald & another *vs.* Albert L. Kavanaugh & another.

A. L. Kavanaugh & another *vs.* Robert J. MacDonald & another.

Suffolk.    March 16, 1926.— May 19, 1927.

Present: Rugg, C.J., Pierce, Carroll, Wait, & Sanderson, JJ.

Contract, Construction, Performance and breach, Building contract. Accord and Satisfaction. Estoppel. Payment. Bills and Notes, Check as payment.

A contracting builder agreed with an owner of land to "perform in a faithful and workmanlike manner, the following specified work, viz.: The Excavation, Roofing, Concrete, Brick and Plastering Work, Water Connection and use of Water, Steel Work, Metal Sash and Wire Glass, Lumber, Hardware including Doors, All Carpenter Labor, Painting, Heating, in fact All Material and Labor in the construction of a Public Garage" on the land; and after the completion brought an action of contract against the owner for extra work and materials, at the trial of which there was evidence that the garage was to be built with reference to three plans, and that after the signing of the agreement changes were made that necessitated the performance of the work and furnishing of the materials sought to be recovered as extras. There was no evidence that the parties agreed on any additional price therefor. *Held,* that

(1) Whether the parties intended when the changes in the plan were made that the additional costs, if any, should be borne by the plaintiff or that they should be borne by the defendant, was a fact to be determined in the light of all the circumstances and was not a mere question of law;

(2) It was proper to refuse to order a verdict for the defendant.

At the trial above described, there was evidence, which was contradicted, that certain plans and blue prints, a claim for compensation for which composed one item of the declaration, were procured at the request of the defendant before the agreement was executed by the parties and that they "didn't go with the contract." *Held*, that it was proper to refuse to order a verdict for the defendant as to such item.

At the trial above described, the defendant objected to a question of the plaintiff, "What is the fair, reasonable price for your own work and labor in preparing these plans?" In overruling the objection, the trial judge ruled that "it is for the jury to say whether the plans were to be paid for separately, or whether the getting of the plans together was either something that the witness was to do for his own benefit in order to bid on the job, or something that was at least included within the contract price." *Held*, that an exception to the admission of the question must be overruled.

At the trial of the action above described, there were introduced in evidence a check of the defendant payable to the plaintiff, indorsed by the plaintiff and bearing the words, "In full payment for building garage." There was evidence for the plaintiff, contradicted by the defendant, that the words above quoted were not on the check when it was received or when it was indorsed by the plaintiff. The amount of the check was a balance due on the contract proper, not including extras, and there was evidence for the plaintiff that when it was received by him there was an understanding between him and the defendant that its amount was exclusive of extras. The defendant contended that acceptance of the check estopped the plaintiff from claiming extras. The judge, without exception by the defendant, charged the jury in substance that the check was not proof of a release of the claim for extras, if the plaintiff had any valid claim for extras at that time. *Held*, that the acceptance of the check did not as a matter of law estop the plaintiff.

A statement in the judge's charge in the action above described, "and that is just what . . . [ the defendant ] did in this case," in the circumstances was *held* not to be harmful to the defendant.

Provisions of the contract above described were, that the garage was "To be constructed in a First-Class manner to the entire satisfaction of the Owners. Same to be completed in a reasonable time, Weather conditions permitting." A cross action to the action above described was based on a claim that the builder had failed to build the garage to the owner's "entire satisfaction" by reason of an alleged imperfect and unworkmanlike construction of a "sand trap." Evidence as to whether the construction of the sand trap was a part of the obligation assumed by the builder was conflicting. The judge left to the jury the question, whether in the circumstances of this case a sand trap was "so necessary to a completed public garage that a public garage couldn't be built as a

complete adequate structure, reasonably adapted for use as a public garage without a sand trap"; and instructed them in substance that if they found the sand trap was a part of the garage which the builder had contracted to build, the owner could recover as damages against the builder "the cost of making the construction what it ought to be," if, as made, it was improperly constructed. *Held*, that

(1) The words of the contract, "to the entire satisfaction of the Owners," imported that the construction should be to the satisfaction of one acting as a reasonable man in the circumstances;

(2) It was proper to refuse to order a verdict for the owner.

CROSS ACTIONS OF CONTRACT between Robert J. Mac-Donald and John W. Richardson, doing business under the name and style of MacDonald and Richardson, contracting builders, and Albert L. and Joseph B. Kavanaugh, owners of premises on Harris Avenue in that part of Boston known as Jamaica Plain, growing out of the building of a garage by the plaintiffs on the defendants' land, the contractors in the first action seeking $910.40 for "extra work done and materials furnished," and the owners in the second action seeking $127 damages due to alleged failure by the contractors to complete the contract. Writ in the first action in the Superior Court dated October 22, 1925; and in the second action in the Municipal Court of the City of Boston dated July 20, 1925.

On removal of the second action to the Superior Court, the actions were tried together before *Qua*, J. Material evidence and rulings by the trial judge are stated in the opinion. The jury found for the contractors as plaintiffs in the first action in the sum of $910.40, and for the contractors as defendants in the second action. The owners alleged exceptions.

*J. J. Enwright*, for A. L. Kavanaugh and another, submitted a brief.

*R. J. Lane*, for Robert J. MacDonald and another.

PIERCE, J. These are two separate causes of action dependent upon the same evidence. They were tried together to a jury in the Superior Court.

In the action of MacDonald and Richardson, plaintiffs, the defendants excepted to the refusal of their motion for a directed general verdict; and to the denial of their motion for a directed verdict on the plaintiffs' item "38" in the

account annexed, that is to say, "For work and labor in preparation of plans and blueprints for said garage at agreed price $60." The jury found for the plaintiffs.

The undisputed evidence warranted the jury in finding that the plaintiffs and the defendants on December 20, 1924, entered into a contract whereby the plaintiffs agreed to "perform in a faithful and workmanlike manner, the following specified work, viz.: The Excavation, Roofing, Concrete, Brick and Plastering Work, Water Connection and use of Water, Steel Work, Metal Sash and Wire Glass, Lumber, Hardware including Doors, All Carpenter Labor, Painting, Heating, in fact All Material and Labor in the construction of a Public Garage, at No. 2 Harris Avenue, Jamaica Plain, Boston, Massachusetts. To be constructed in a First-Class manner to the entire satisfaction of the Owners. Same to be completed in a reasonable time, Weather conditions permitting. All for the sum of Ten Thousand Dollars ($10,000) with Allowances . . . from above sum." The claim of these plaintiffs against the defendants is for work and material alleged to have been performed and furnished outside the terms of the original contract. In their brief the defendants do not question that the plaintiffs performed the work and furnished the material itemized in the account annexed or that the prices set against such items are reasonable for the services, if the defendants are obligated to pay for them, the defence thereto being that the plaintiffs under their contract were bound to furnish "in fact All Material and Labor in the construction of a Public Garage."

Upon this issue there was evidence at the trial which warranted a finding that the garage to be constructed was to be built with reference to three plans; and that after the signing of the agreement changes were made that necessitated the performance of the work and furnishing of the materials sought to be recovered as extras. Respecting these items there is no evidence that the parties agreed on any additional price therefor; and the defendants contend that, because of the absence of such agreement, the work and materials called "extras" were required to be performed and furnished under the provision of the original contract which reads, "in fact

All Material and Labor in the construction of a Public Garage." Whether the parties intended when the changes in the plan were made that the additional costs, if any, should be borne by the plaintiffs or the defendants was a fact to be determined in the light of all the circumstances and was not a mere question of law. The motion for a directed verdict on the whole evidence was denied rightly.

The particular motion for a directed verdict on item "38" was denied rightly. There was evidence that the plans were procured at the request of the defendants before the agreement was executed by the parties and that they "didn't go with the contract." There also was contradictory evidence to the effect that the plaintiffs were to prepare the preliminary plans as a part of the agreement to build the public garage for the price of $10,000. In these circumstances it is plain a verdict could not have been directed for the defendants. The facts that the agreement did not mention the plans and that there was no agreement to pay $60 as an "agreed price" would not prevent the recovery of that sum if the plaintiffs were requested by the defendants to procure the plans and that sum was a reasonable price therefor, as the plaintiffs were entitled to recover a reasonable price for their services in the event they failed to prove an agreement to pay the specific sum set out in the account annexed.

The exception of the defendants to the question, "What is the fair, reasonable price for your own work and labor in preparing these plans," was based on the theory of the defendants that all the understandings and agreements before the execution of the contract were merged into that contract and were governed by the phrase above quoted in the contract. In overruling the objection to the question the trial judge ruled that "it is for the jury to say whether the plans were to be paid for separately, or whether the getting of the plans together was either something that the witness was to do for his own benefit in order to bid on the job, or something that was at least included within the contract price." This ruling presented the issue fully and fairly and the exception must be overruled.

The defendants' request numbered "2," that "As a matter

of law the plaintiffs' indorsement on the check No. 4354, dated May 14, 1925, and payable to the order of MacDonald & Richardson in the sum of $1,161.75 drawn on the Boulevard Trust Company, Brookline, Mass., and signed by J. B. Kavanaugh, estops the plaintiffs, or either of them, from recovering in this action," was denied rightly. The check in question when offered in evidence had written upon it in ink the words "In full payment for building garage at 2 Harris Ave., Jamaica Plain, Total $10,000.00." There was evidence for the plaintiffs, contradicted by the defendants, that the words above quoted were not on the check when it was received or when it was indorsed by the plaintiffs. There was evidence for the plaintiffs that there was no dispute that the amount of the check, $1,161.75, was the balance of the $10,000.

The circumstances attending the delivery of the check are stated in the evidence of the plaintiff Richardson, in substance, as follows: "When I went to Mr. Kavanaugh for the settlement on the garage, I started to talk about the full amount, the extras and everything that was due, he [Kavanaugh] said, 'Let the extras go because I want to settle now for the general contract.' He says, 'Let's keep everything else separate.' So I says, 'All right.' And he figured up that he had paid the lumber, $700 or $800 I have forgotten the amount now, and he paid the steamfitter $900, and the electrician $130 — something like that. I am not sure of the amounts — and the painter; and the balance of the $10,000 was $1161.75, and that is what he gave me that check for." The judge in his charge in substance said, no exception being taken, that the check was not proof of a release of the claim for extras, if the plaintiffs had any valid claim for extras at that time. "You may consider it as bearing upon the credibility of the parties . . . [and] as bearing upon the probabilities as to the issues . . . but it is not a release. . . . there has been no evidence that there was any dispute of any kind as to Mr. Kavanaugh's owing the amount which he did pay at the time he paid that check. Where a man gives a check for an amount which is admittedly due from him, which he is not disputing, then though there may be a dis-

pute at the same time about some further amount, but if he is only paying the amount that he admits himself to be due beyond dispute, as Mr. Kavanaugh was in this case, then the payment is not a release or a bar to a future claim by the other party, if the other party accepts and indorses the check, because there is no consideration for any agreement to release." The charge is based upon *Whittaker Chain Tread Co.* v. *Standard Auto Supply Co.* 216 Mass. 204, 208.

Exceptions to refusals to grant the defendants' requests numbered three, six, seven and eight present no questions of law which are not involved in the motions for a directed verdict, and those exceptions are overruled.

The exception to the statement of the judge in speaking of the legal effect of receiving the check, "and that is just what Kavanaugh did in this case," was not harmful to the defendants. The testimony of Richardson which was not contradicted in any degree showed the amount of the check was an amount admitted to be due by Kavanaugh upon his theory of the contract, and was an amount much less than the plaintiffs claimed was due them if they were entitled to recover for "extras." The reference objected to appears as a part of an illustration of a possible situation and could not have influenced the jury to believe the defendants conceded the contention that the plaintiffs were entitled to payment for so called extras.

In the second action the plaintiffs in two counts in contract seek to recover damages against the plaintiffs in the first action for the alleged failure to build the public garage described in the principal action to their entire satisfaction.

The ground of complaint centers around an alleged imperfect and unworkmanlike construction of a "sand trap" which, the plaintiffs contend, was included in the above described agreement. There was evidence that the trap leaked because of defective plumbing and that the plaintiffs properly expended $127 to remedy the imperfection. On the other hand, there was evidence that the plaintiffs allowed the tank to be filled with water, sand and grease before the concrete set, and that such use prevented the proper setting

of the concrete and was the cause of the damage.   There was evidence that the construction of the sand trap was a part of the obligations assumed by the defendants, and substantial evidence to the contrary.   At the close of the evidence the judge refused the plaintiffs' motion for a directed verdict, and left to the jury the question, whether in the circumstances of this case a sand trap was "so necessary to a completed public garage that a public garage couldn't be built as a complete adequate structure, reasonably adapted for use as a public garage without a sand trap"; and instructed them in substance that if they found the sand trap was a part of the garage which the defendants had contracted to build, the plaintiffs could recover damages against the defendants "the cost of making the construction what it ought to be," if, as made, it was improperly constructed.

We find nothing in the contention that the proof did not go so far as to show that the sand trap as a matter of law was not to the satisfaction of the plaintiffs.   The words of the contract "to the entire satisfaction of the Owners" import that the construction shall be to the satisfaction of a reasonable man and not, as the plaintiffs contend, to the personal satisfaction of the owners.   *Lockwood Manuf. Co.* v. *Mason Regulator Co.* 183 Mass. 25, 26.   No evidence was offered that all the work done, other than that which related to the sand trap, was not done in a "First-Class manner" or that it was not "to the entire satisfaction of the Owners."

The refusal to direct a verdict for the plaintiffs in the second action and the refusal to instruct the jury as requested by the plaintiffs in that action were right.   It results that the exceptions of the defendants in the first action, and the exceptions of the plaintiffs in the second action, must be overruled.

*Exceptions overruled.*