FRANK W. SHUMAKER *vs.* LUCERNE-IN-MAINE COMMUNITY ASSOCIATION.

Suffolk.   March 6, 1931. — April 1, 1931.

Present: RUGG, C.J., CROSBY, PIERCE, WAIT, & SANDERSON, JJ.

*Contract,* Implied.   *Corporation,* What constitutes corporate action. *Payment,* What constitutes, By check. *Evidence,* Of payment; Opinion: expert.

In an action of contract upon a *quantum meruit* for services as advertising, publicity and sales director of the defendant, a corporation owning approximately thirteen square miles of land in Maine which it had divided into lots and was selling, there was evidence that the plaintiff had received $75 each week by a check bearing on its face the printed words, "In full of account as stated in memorandum of settlement, a duplicate of which is rendered herewith." The memorandum attached to the last four checks indicated that each of them was in payment of publicity department salary for one week. Although the defendant's officers testified in substance that there was a special agreement that the plaintiff should not receive more than the sums stated in the checks unless one who was the corporation's president, treasurer and principal stockholder so decided, the jury, upon evidence warranting the finding, found specially that there was no agreement as to the amount the plaintiff was to be paid for his services. There was evidence of the services performed by the plaintiff with knowledge of the officers of the defendant, and of their value. *Held,* that

(1) Corporate acts without a vote may furnish the basis for an implied contract;

(2) Upon the evidence there was no doubt that the plaintiff expected to be paid by the defendant for his services and that the defendant expected to pay him;

(3) The plaintiff, upon the fact specially found, was entitled to recover on an implied contract the fair value of his services;

(4) The acceptance of the checks for an undisputed part of a disputed claim did not operate as a release of the balance of the claim,

even though each check purported to be in settlement of the whole amount then due.

A general exception to allowing a hypothetical question to be put to an expert witness will not be sustained upon a technical ground which was not specified at the trial and which apparently was not in the minds of the court or of the opposing counsel, and which might have been removed if attention had been called to it.

CONTRACT, with a declaration described in the opinion. Writ dated July 15, 1927.

In the Superior Court, the action was tried before *Gibbs*, J. Material evidence and special findings by the jury are described in the opinion. There was a verdict for the plaintiff in the sum of $9,307.61, and the judge reported the action for determination by this court.

*E. P. Furber*, (*E. W. Ogden* with him,) for the defendant.
*J. J. Hurley*, (*J. A. Canavan* with him,) for the plaintiff.

SANDERSON, J. This case is reported under G. L. c. 231, § 111, the defendant having failed to comply with the statute in filing its bill of exceptions. The action is in contract to recover a balance alleged to be due the plaintiff as advertising, publicity and sales director of the defendant from November 12, 1925, to December 23, 1926. The declaration as amended is in three counts, the first on an agreement for a fixed salary alleged to have been entered into between the plaintiff and Harold M. Saddlemire and adopted by the defendant after its incorporation, and the third for a stated sum alleged to be the fair value of the work done by the plaintiff for the defendant; the second count was waived at the trial.

The plaintiff testified that he had a wide experience in advertising, publicity and sales promotion campaigns; that in the summer of 1925 he was engaged by Saddlemire, the promoter of the defendant corporation, who, after its incorporation in Maine, on November 12, 1925, became its president, treasurer and principal stockholder; that Saddlemire agreed that the corporation to be formed would employ the plaintiff at a salary of $50,000 a year; that the plaintiff was employed to act as advertising and publicity director and promoter of the sales campaign of the corporation. The

treasurer of the defendant testified that the salary offered was $75 a week with the understanding that if the plaintiff stayed with the corporation until it was on a profit making basis and if his services were satisfactory Saddlemire would provide for him in a manner commensurate with his efforts, but that Saddlemire was to be the sole judge in the matter. The contract was made in Maine. One of the contentions of the defendant is that there was not sufficient evidence upon which to base a recovery on the *quantum meruit* count.

The defendant became the owner of land in Maine covering approximately thirteen square miles, and divided this land into lots under a plan described as a club membership and community association arrangement. Sales began on November 15, 1925, and a pamphlet issued on March 15, 1927, stated that over seven thousand lots had been sold and that the sale of lots and log cabins had reached the $1,000,000 mark. During the period of his employment the plaintiff devoted all his time to working for the corporation as publicity, advertising and sales director and assumed charge of practically everything that went on in the central executive office in Boston. At one time he was vice president of the company, having two assistants, one of whom was paid $125 a week, and there were thirty-five to forty salesmen operating out of the Boston office. There was testimony that he was indispensable to the defendant, that he had entire charge of the sales, and that the cost of advertising between the formation of the corporation and December 31, 1926, was $209,876. The plaintiff received, with one exception, a check for $75 every week. Each of these checks dated on and after May 7, 1926, bore on its face the printed words "In full of account as stated in memorandum of settlement, a duplicate of which is rendered herewith." The memorandum attached to the last four indicated that the check was in payment of the publicity department salary for one week. The plaintiff denied that the checks were for his salary and stated that they were received as a drawing account. He received in addition thereto checks ranging from $50 to $500 from Saddlemire and the defendant. These additional payments amounted in all to $1,340 exclusive of reimbursement for

travelling and incidental expenses. Saddlemire testified that these additional payments were made on account of salary to be earned. The plaintiff testified that in December, 1925, he asked Saddlemire for $5,000 and was promised the money the first week in January but that it was not paid.

The trial judge instructed the jury that in reaching their verdict they should deduct from whatever amount they found the plaintiff's services were actually worth the amount which had already been paid him. In answer to special questions the jury found that there was no agreement as to the amount the plaintiff was to be paid for his services; they fixed the sum which represented the value of the services rendered and returned a general verdict for the plaintiff for that sum. The special findings indicate that the verdict must have been based on the third count, and the denial of the defendant's motions that a verdict be directed on the first count and that the plaintiff be required to elect between the first and third counts need not be considered.

The trial judge properly refused to direct a verdict for the defendant on count three. To support this count it was not necessary for the plaintiff to rely upon a contract made by the promoter in behalf of the corporation to be formed and later adopted by it and it is not necessary to consider what the law of Maine or elsewhere would be in case the plaintiff's recovery depended upon proof of a contract so made. The verdict on the third count imports the finding of an agreement to pay the plaintiff the fair value of his services, based upon the acts of the parties after the incorporation. Corporate acts without a vote may furnish the basis for an implied contract. *Proprietors of the Canal Bridge* v. *Gordon,* 1 Pick. 296, 304. *North Anson Lumber Co.* v. *Smith,* 209 Mass. 333, 337, 338. *Whittaker* v. *Eastern States Engineering Corp.* 269 Mass. 451, 458. Upon the evidence there can be no doubt that the plaintiff expected to be paid by the defendant for his services and that the defendant expected to pay him. The contention has not been made that it was not within the power of the corporation organized to develop and sell lots

of land to employ a man to direct its advertising, publicity and sales.   It is settled by the finding of the jury that there was no agreement as to the amount the plaintiff was to be paid.   In this state of facts he may recover on an implied contract the fair value of his services.   *Lonnqvist* v. *Lammi*, 240 Mass. 371, 374.   *Murphy* v. *Mitchell*, 254 Mass. 18, 21.   *Patron* v. *Quinlan*, 271 Mass. 339.   *Turner* v. *Buttrick*, 272 Mass. 261, 263.   Some of the acts on which the implied contract rests were performed in Maine and some in Massachusetts.   But it does not seem to be contended that on this point any different rule has been established in Maine from that which prevails in this Commonwealth. *Atlantic Transportation Co. Inc.* v. *Alexander Shipping Co. Inc.* 261 Mass. 1, 7, 8.   *Lennon* v. *Cohen*, 264 Mass. 414, 420, 421.   *Richards* v. *Richards*, 270 Mass. 113, 117.   *Seemann* v. *Eneix*, 272 Mass. 189, 193, 194.   St. 1926, c. 168, amending G. L. c. 233.   It was not disputed that the plaintiff was entitled to receive at least $75 a week.   The acceptance of a check for an undisputed part of a disputed claim does not operate as a release of the balance of the claim, even though the check purports to be in settlement of the whole amount due.   *Whittaker Chain Tread Co.* v. *Standard Auto Supply Co.* 216 Mass. 204.   *Moss* v. *Goldstein*, 254 Mass. 334, 336, 337.   *MacDonald* v. *Kavanaugh*, 259 Mass. 439, 444, 445.   *Puritan Wool Co.* v. *Winsted Hosiery Co.* 263 Mass. 467, 471.

Exceptions were saved to three somewhat similar hypothetical questions to experts in regard to the value of the services rendered by the plaintiff.   The exceptions saved were general and the trial judge was not informed whether the ground of the objection related to the qualification of the witness to some or all of the facts assumed, to the subject matter or to something else.   The questions embraced many assumed facts, and the only objection to them now urged is that two of the facts assumed were not supported by the evidence.   They were in substance that during a period ending either on December 24 or December 31, 1926, the defendant had sold about seven thousand lots and received approximately $1,000,000.   While a pamphlet or

other evidence in the case tended to prove that these figures represented results as they existed on March 15, 1927, it is apparent that the amounts named in the questions purported to be approximations only. There was no evidence to prove the number of sales, if any, or the amount of money taken in between December, 1926, and March 15, 1927; and the jury may well have inferred in the absence of such evidence that sales of building lots in a land development scheme in Maine' would be few in midwinter. The verdict was much less than the valuations to which the experts testified. The fact that the questions may have included sales made after the plaintiff ended his employment would not. make the admission of the question reversible error. "A hypothetical question rests upon either assumed facts already in evidence, or assumed facts which may be put in evidence. In determining the scope, fulness and distinctness of the questions, much must be left to the discretion of the presiding judge, which ought not to be overridden, unless it very clearly appears to have been wrongly exercised." *Carroll* v. *Boston Elevated Railway*, 200 Mass. 527, 533. *Anderson* v. *Albertstamm*, 176 Mass. 87. *Sullivan* v. *Brabason*, 264 Mass. 276, 288. It did not appear when the questions were asked whether further evidence would be introduced in support of the facts assumed. In fairness to the trial judge and to the opposing party the defendant's counsel should have directed the judge's attention to the point now made, if he then had it in mind, or have asked that the jury be instructed to disregard the answers unless they found the material facts assumed established. See *Taylor* v. *Creeley*, 257 Mass. 21, 27. "Where the objection to testimony is merely general, an exception to its admission should not be sustained upon a technical ground not specified at the trial, apparently not in the mind of the court or of the adverse counsel, and which might have been removed if attention had been called to it." *New Hampshire Fire Ins. Co.* v. *Healey*, 151 Mass. 537, 539. *Knight* v. *Overman Wheel Co.* 174 Mass. 455, 465, 466. See *Boutelle* v. *Dean*, 148 Mass. 89, 90. In *Jewett* v. *Brooks*, 134 Mass. 505, the question held to be objection-

able assumed facts concerning a contract materially differ-
ent from those in the contract upon which the action was
based.   No error of law is disclosed by this record, and
judgment must be entered for the plaintiff on the verdict.

*So ordered.*