## C. JUNIOR RUSSELL *vs.* BOND & GOODWIN INCORPORATED.

### Suffolk.     May 12, 1931. — September 10, 1931.

### Present: CROSBY, CARROLL, WAIT, & FIELD, JJ.

*Contract*, Construction, Implied, What constitutes. *Agency*, Undisclosed. *Stockbroker*. *Bills and Notes*, Holder in due course. *Payment*.

An agent was requested by his principal to purchase for him fifteen shares of a certain corporate stock. The agent ordered fifty-five shares of that stock from a broker, but did not inform the broker that he was ordering any of them for his principal. The broker charged the fifty-five shares to the individual account of the agent. The principal, upon being notified by the agent of the purchase of the stock, delivered a check, signed by him in blank, to the agent with instructions to fill in the name of the seller of the stock and the sum due for the fifteen shares and to have the stock certificate sent to the principal. The agent filled in the broker's name as payee and the precise amount due for fifteen shares, and sent the check to the broker with a letter stating that it was in payment of fifteen of the shares, which he had sold to the principal, and requesting the broker to register such shares in the principal's name and to send the agent a new bill for the remaining forty shares. The broker did not register such shares in the principal's name, but held all the fifty-five shares as collateral security for the agent's general individual account, to which he credited the amount of the check. Subsequently, after the broker had cashed the check, the principal learned that the agent had bought more than fifteen shares, notified the broker that the check was his and that the fifteen shares had been purchased for him, and demanded delivery thereof, which was not made. In an action by the principal against the broker to recover the amount of the check, it was *held*, that

(1) The contract between the agent and the defendant was an indivisible one for the purchase of fifty-five shares;

(2) That contract was not between the plaintiff and the defendant, since the agent had no power to make a contract in behalf of the plaintiff except for fifteen shares;

(3) Payment by the agent for fifty-five shares and delivery by the defendant of that number of shares were concurrent conditions, and the defendant was not bound to make part delivery upon receipt

of part payment: the agent had no right, without the assent of the defendant, to have the check applied to any fixed number of shares less than fifty-five;

(4) An agreement by the defendant to deliver fifteen shares upon payment therefor was not to be implied from the defendant's acceptance and cashing of the check: the condition in the letter accompanying the check was one which the agent had no right to make;

(5) Although the agent had no authority to use the plaintiff's check to make a part payment on his own contract to buy fifty-five shares of stock from the defendant, the defendant was entitled to cash the check and to retain the proceeds thereof as such a part payment by the agent if the defendant was a holder of the check in due course;

(6) Nothing in the circumstances disclosed to the defendant that the agent was acting as such rather than as a principal in transmitting the check;

(7) In the circumstances, the defendant was a holder in due course of the check;

(8) The plaintiff could not recover.

CONTRACT OR TORT.  Writ dated February 27, 1930.

The action was heard in the Superior Court without a jury by *McLaughlin*, J., upon an agreed statement of facts. Material facts are stated in the opinion.  The judge found for the plaintiff in the sum of $3,336.84, and reported the action for determination by this court.

*E. R. Dewing & E. B. Conway*, for the defendant, submitted a brief.

*R. E. Marshall*, for the plaintiff.

FIELD, J.  This is an action of contract or tort brought in the Superior Court to recover from the defendant, a corporation engaged in the business of selling investment securities, the proceeds, with interest, of a check for $3,120 signed by the plaintiff and collected by the defendant. The case was heard on an agreed statement of facts by a judge, sitting without jury, who found for the plaintiff in the sum of $3,336.84 and ordered judgment therefor.  The case is reported to this court at the request of the parties upon their agreement "that if upon the facts stated . . . the plaintiff was entitled to a finding . . . there should be judgment in the amount of $3,336.84 and costs; otherwise judgment to be entered for the defendant."

The plaintiff was not entitled to a finding upon the facts stated.

The plaintiff requested one Glass, the "Statistical Manager" of a trust company, to buy for him fifteen shares of a certain corporate stock. Glass ordered fifty-five shares of this stock from the defendant, but did not inform the defendant that he was ordering any of it for the plaintiff and the defendant charged the fifty-five shares to the account of Glass. The plaintiff did not know that Glass had ordered more than fifteen shares. Upon receiving a statement from the defendant of the amount due for the fifty-five shares Glass notified the plaintiff that he had secured the stock. The plaintiff then delivered to Glass his check in blank and instructed Glass to fill in the name of the person or corporation from which he had ordered the stock and the amount which was due for the fifteen shares and have the stock certificate sent to the plaintiff. Glass filled in the name of the defendant as payee and the amount due the defendant for fifteen shares and forwarded the check to the defendant with a letter in which he stated that the check was "in payment of fifteen shares" of the stock in question, that they represented part of the fifty-five shares purchased and that as he could not "handle all of this" himself he had sold fifteen shares to the plaintiff. By this letter Glass requested the defendant to register the fifteen shares in the name of the plaintiff and to send a receipted bill therefor and a new bill for the forty shares unpaid for. The defendant credited this check to the account of Glass, but did not have any shares of stock registered in the name of the plaintiff, and continued to hold the fifty-five shares as collateral security for the general account of Glass. The defendant acknowledged the receipt of the check and letter and sent to Glass a statement showing the balance due on the purchase of fifty-five shares.

After the transaction above described the plaintiff endeavored to ascertain from Glass why he had not received the fifteen shares of stock, but was unable to obtain any information. Glass, however, by letter, inquired of the defendant why a certificate of fifteen shares had not been received by the plaintiff and was informed by letter that the transfer had not been made because payment for the

other shares had not been received. Thereafter the plaintiff wrote to the defendant, stating that he had bought fifteen shares of the stock in question from the defendant through Glass and that his check in payment therefor had been sent to the defendant, and requesting that the certificate be sent to him. The defendant replied by letter that it had no record of any transaction with him and enclosed a copy of its letter to Glass. The plaintiff then, for the first time, learned that Glass had ordered more than fifteen shares. He wrote to the defendant calling attention to the fact that the check was his check, and not that of Glass, and that the stock was purchased for him and was to be delivered to him, and requesting delivery of fifteen shares of stock. The defendant made no reply and did not offer to deliver the stock or to return the proceeds of the check.

The parties agreed that "it is a custom of the investment security trade that a brokerage concern selling securities retains all securities in a specific sale or order as collateral security for the payment of the amount due to said concern on such sale or order, refraining from transferring any part or the whole of the same until the entire sale or order is paid for."

There was no contract between the plaintiff and the defendant for the purchase and sale of any shares of the stock in question. The contract originally made between Glass and the defendant was an indivisible contract for the purchase by Glass and the sale by the defendant of fifty-five shares. Glass had no power as agent of the plaintiff to bind him by such a contract. The plaintiff, therefore, had no right thereunder as against the defendant before the transmission of his check to the defendant by Glass, as an enclosure, in the letter requesting that fifteen shares be registered in the name of the plaintiff.

By transmitting the check to the defendant, with the accompanying letter, Glass purported to make a payment on account of his contract to buy fifty-five shares of stock and not to make an independent offer to buy fifteen shares. Under the contract payment by Glass for fifty-five shares and delivery by the defendant of that number of shares

were concurrent conditions. We need not consider whether the custom of brokers selling securities to retain all securities in a specific sale as collateral security for the amount due on such sale until the purchase price is fully paid was an unexpressed term of the contract between Glass and the defendant (see *Barrie* v. *Quinby,* 206 Mass. 259, 264–265), for even apart from such a custom the defendant was not bound to make part delivery upon receipt of part payment. Since the contract was indivisible Glass had no right, without the assent of the defendant, to have the payment applied to any fixed number less than the whole number of shares sold. The case does not fall within the rule which permits a debtor to determine the application of a payment as between several debts. See *Ramsay* v. *Warner,* 97 Mass. 8, 13; *Spinney* v. *Freeman,* 230 Mass. 356, 358.

There was no express agreement by the defendant to deliver fifteen shares upon payment therefor and it is unnecessary to determine the effect of such an agreement. Nor was such an agreement to be implied from the defendant's acceptance and cashing of the check. As the amount covered by the payment was admittedly due from Glass to the defendant he could not make acceptance of this payment by the defendant conditional upon the defendant's applying the check or its proceeds as full payment for fifteen shares and registering those shares in the name of the plaintiff. Since the condition was one which Glass had no right to impose, and for that reason was void, the defendant was not put to an election to refuse the check or to take it on the condition on which it was offered, but could take it free of the void condition which Glass sought to impose. The principle established by *Whittaker Chain Tread Co.* v. *Standard Auto Supply Co.* 216 Mass. 204, 208–209, is applicable to the circumstances of this case. See also *MacDonald* v. *Kavanaugh,* 259 Mass. 439, 444–445; *Puritan Wool Co.* v. *Winsted Hosiery Co.* 263 Mass. 467, 471; *Shumaker* v. *Lucerne-in-Maine Community Corp.* 275 Mass. 201, 205.

Though Glass had no authority to use the plaintiff's check to make a part payment on his own contract to buy

fifty-five shares of stock from the defendant, the defendant was entitled to cash this check and to retain the proceeds thereof as such a part payment by Glass if the defendant was a holder of the check in due course. See G. L. c. 107, § 80. On the facts stated the defendant was a holder in due course. See G. L. c. 107, § 75. The payee of a check may be a holder thereof in due course (*New Hampshire National Bank* v. *Garage & Factory Equipment Co.* 267 Mass. 483, 485) even though it was incomplete when signed by the maker. *Liberty Trust Co.* v. *Tilton,* 217 Mass. 462. The plaintiff's check payable to the defendant when taken by the defendant was complete and regular upon its face, was not overdue and had not been dishonored. Since it was taken by the defendant for an antecedent debt of Glass by whom it was negotiated (see *Liberty Trust Co.* v. *Tilton,* 217 Mass. 462, at pages 464–465), it was taken for value. G. L. c. 107, § 48. *Boston Steel & Iron Co.* v. *Steuer,* 183 Mass. 140.

So far as appears from the facts stated the check was taken by the defendant in good faith and, "at the time it was negotiated" to the defendant, the defendant "had no notice of any infirmity in the instrument or defect in the title of the person negotiating it." G. L. c. 107, § 75. To constitute such notice the defendant "must have had actual knowledge of the infirmity or defect, or knowledge of such facts that . . . [its] action in taking the instrument amounted to bad faith." G. L. c. 107, § 79. The form of the check did not indicate that Glass was not the owner of it and entitled to apply it to the payment of his debt to the defendant. *Boston Steel & Iron Co.* v. *Steuer,* 183 Mass. 140. *National Investment & Security Co.* v. *Corey,* 222 Mass. 453. *McLaughlin* v. *Paine Furniture Co.* 245 Mass. 377. *Johnson & Kettell Co.* v. *Longley Luncheon Co.* 207 Mass. 52, is distinguishable. Nothing in the circumstances of the case disclosed to the defendant that Glass was acting as an agent rather than as a principal in transmitting the check. In this respect *Fisher* v. *Brown,* 104 Mass. 259, relied on by the plaintiff, is distinguishable. The form of the check was consistent with the statement in Glass's

letter to the defendant that he had resold to the plaintiff fifteen of the fifty-five shares bought by him from the defendant. The possession by Glass of the plaintiff's check for the precise amount of the purchase price of fifteen shares indicated no more than that the plaintiff had paid Glass in advance of the delivery of the shares. It did not show that anything was wrong in the transaction by which the plaintiff's check was delivered by Glass to the defendant. See *Paika* v. *Perry*, 225 Mass. 563, 569. Suspicion by the defendant — or even reasonable cause to know — that the facts were not as represented by Glass was not the equivalent of knowledge which would show bad faith on the part of the defendant in taking the check. *Reynolds* v. *Park Trust Co.* 245 Mass. 440. The rights of the defendant as a holder of the check in due course were not affected by knowledge acquired by it from the plaintiff after the check was cashed.

It follows that in accordance with the terms of the report there must be judgment for the defendant.

*So ordered.*