ELIZABETH M. MACKLIN *vs.* ROBERT W. MACKLIN & others.

Suffolk.    October 7, 1943. — February 2, 1944.

Present: FIELD, C.J., LUMMUS, DOLAN, & RONAN, JJ.

*Agency,* Scope of authority or employment. *Bills and Notes,* Holder in due course, Payee, Check, Instrument signed in representative capacity. *Notice. Bona Fide Purchaser. Equity Pleading and Practice,* Requests and rulings.

Upon an appeal from a final decree in a suit in equity, with a report of material facts under G. L. (Ter. Ed.) c. 214, § 23, a purported ruling by the trial judge was immaterial, since his only duty was to enter the proper decree on the pleadings and facts found.

The facts, that a check on a woman's bank account, complete and regular on its face, which was signed in her name "by" her husband, "Atty," under a general written authorization to him, filed with the bank, to sign checks for her, was drawn for a purpose within the husband's ostensible authority to act for her, and was taken by the payee for value before it was overdue with knowledge that it was drawn on funds standing in the wife's name and with no inquiry by him as to the husband's authority to use the funds but without knowledge that in fact the husband's authority did not extend to use of the funds for the purpose for which the check was drawn, justified conclusions that within G. L. (Ter. Ed.) c. 107, §§ 75, 79, the payee took the check in

good faith and without notice of any infirmity and was a holder in due course, and that he was not liable to the wife for the funds transferred by the check; the form of the check was not as matter of law notice to him of an infirmity.

BILL IN EQUITY, filed in the Superior Court on March 4, 1943.

The case was heard by *Cabot*, J.   In this court it was submitted on briefs.

*E. S. Farmer*, for the plaintiff.

*E. O'Callaghan*, for the defendant Gleason.

DOLAN, J.   This is a bill in equity by which the plaintiff seeks an accounting from her husband, Robert, of certain funds, to charge the defendant Sherman Gleason, doing business as Sherman Gleason & Company, as constructive trustee for her benefit of certain funds, and to reach and apply certain property in the hands of other defendants alleged to be owned in whole or in part by the defendant Gleason or "Sherman Gleason & Company."   The evidence is not reported, but the judge filed "findings, rulings and order for final decree" dismissing the bill, and subsequently entered a final decree to that effect, from which the plaintiff appealed.   Upon her request for a report of material facts under G. L. (Ter. Ed.) c. 214, § 23, the judge adopted as such a report the "findings, rulings and order for decree" theretofore filed.   See *Berman* v. *Coakley*, 257 Mass. 159, 161.   Since the evidence is not reported, "the report of material facts must be accepted as true unless containing inconsistent findings, and the . . . [decree] must be affirmed if supported by the facts and within the scope of the bill." *Kennedy* v. *Shain*, 288 Mass. 458, 459.

Material facts found by the judge may be summed up as follows: The plaintiff and the defendant Macklin, hereinafter referred to as Macklin, have been married since 1910 and are still living together.   In May, 1938, the plaintiff owned certain property in her own right consisting in part of a checking account in The First National Bank of Boston. On May 15, 1933, the plaintiff filed with that bank an authorization to her husband to "sign and endorse checks, drafts and notes and to accept drafts as attorney" for her.

This authorization has continued in force since then. It related, however, only to transactions with that bank, and up to May, 1938, the authority conferred upon her husband to sign checks on the account extended only to the payment of her own or household bills. He did not have authority to use the account or to sign checks upon it for his own business purposes. The findings of the judge as to the limitations on Macklin's authority were based upon "the subsequent course of dealings . . . between the plaintiff and her husband," that is, from May 15, 1933, "up to May, 1938."

The judge further found in substance as follows: In the summer of 1937 the plaintiff "became seriously ill and she remained so until the autumn of 1942." During that time she was unable to pay any attention to her own affairs, and the events of which she now complains did not become known to her until after her recovery. Prior to the spring of 1938, Macklin had been associated in business with the plaintiff's brother-in-law in the investment banking business. The defendant Gleason was associated with the same concern. In May, 1938, Macklin and Gleason decided to go into business for themselves. A capital of at least $5,000 was needed "in order to start in." Gleason asked Macklin to contribute as much as he could. As a result, on May 18, 1938, Macklin drew a check for $3,500 on the plaintiff's account in The First National Bank of Boston and delivered it to Gleason, who cashed it on the same day. The check was payable to Gleason and was signed by Macklin "Elizabeth Macklin by Robert W. Macklin Atty." Gleason knew that the check represented property standing in the name of the plaintiff. He made no effort to discover whether Macklin had authority "to use the plaintiff's funds in such a way which in fact he did not have." Subsequently, Gleason repaid to Macklin $900, and "the plaintiff has accepted this as a payment to her." The judge "rule[d]" that Gleason took the check in good faith and that Macklin had apparent authority to use the funds on which the check was drawn for the purpose for which he did use them.

In view of the conclusion we reach, it is unnecessary to

recite the findings of the judge with relation to the ownership by Gleason of certain property standing in the name of other defendants or pledged by Gleason as collateral for loans.

At the outset we dispose of the plaintiff's contentions that the judge erred in ruling that Gleason took the check in good faith and that Macklin had apparent authority to use the funds on which the check was drawn for the purpose for which he did use them, and that this was a question of fact concerning which the judge made no finding. Doubtless the word "rule" instead of the word "find" was used by the judge inadvertently. In any event its use was immaterial. We have already pointed out that the question for determination is whether the facts found by the judge support his decision. The only duty of the judge was to make a correct decision on the pleadings and the specific facts found. *Columbian Insecticide Co. of Boston* v. *Driscoll,* 271 Mass. 74, 77. *Graustein* v. *Dolan,* 282 Mass. 579. *Estey* v. *Gardner,* 291 Mass. 303. See also *Lee* v. *Lee,* 258 Mo. 599, 604.

We are of opinion that the facts found by the judge support his decision. At common law a payee of a negotiable instrument could be a holder in due course. The same is true under the negotiable instruments act. G. L. (Ter. Ed.) c. 107, § 75. *Liberty Trust Co.* v. *Tilton,* 217 Mass. 462, 463, and cases cited. *New Hampshire National Bank* v. *Garage & Factory Equipment Co.* 267 Mass. 483, 485. *Karlsberg* v. *Frank,* 282 Mass. 94, 95. And the defendant Gleason was a holder in due course if the instrument was complete and regular on its face and was received by him before overdue in good faith and for value, and if "at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it." G. L. (Ter. Ed.) c. 107, § 75.

In the instant case, the findings of the judge establish that the check in question was complete and regular upon its face, and was taken before it was overdue and for value. The real issue in the case is whether it was taken by Gleason in good faith and without notice of any infirmity, as found in substance by the judge.

General Laws (Ter. Ed.) c. 107, § 79, provides as follows: "To constitute notice of an infirmity in the instrument or defect in the title of the person negotiating the same the person to whom it is negotiated must have had actual knowledge of the infirmity or defect, or knowledge of such facts that his action in taking the instrument amounted to bad faith." The question whether the check was taken in good faith is one of fact. *Fillebrown* v. *Hayward*, 190 Mass. 472. *Rohstein* v. *Sheehan*, 310 Mass. 221, 223, and cases cited. In the *Fillebrown* case the court said that "neither knowledge of suspicious circumstances, nor doubts as to the genuineness of the title, nor gross negligence on the part of the taker either singly or together are sufficient to defeat the holder's recovery, unless amounting to proof of want of good faith" (page 480). See also *Boston Steel & Iron Co.* v. *Steuer*, 183 Mass. 140, 143–144; *Reynolds* v. *Park Trust Co.* 245 Mass. 440, 446; *Russell* v. *Bond & Goodwin Inc.* 276 Mass. 458, 464; *Pemberton Sq. Operating Co.* v. *Lydon*, 292 Mass. 63, 66. The rights of a holder of a negotiable instrument are to be determined by the simple test of honesty and good faith, and not by a speculative issue as to his diligence or negligence. *Cheever* v. *Pittsburgh, Shenango & Lake Erie Railroad*, 150 N. Y. 59, 65. In the present case, the facts found would not justify a conclusion that Gleason knew that, as between the plaintiff and her husband, there were any limitations on the latter's authority to draw checks on the account in question standing in her name. The findings of the judge disclose that the written authorization so to do, which was filed with the bank, was general and unlimited in its terms. By the execution of that instrument she constituted her husband in effect an agent and, so far as the world was concerned, authorized him without limitation to draw checks as her attorney or agent on the account involved. And the doctrine that a husband may be the agent of his wife is settled. *Duggan* v. *Wright*, 157 Mass. 228, 232. *Smith* v. *Smith*, 313 Mass. 687, 693. *Cobuzzi* v. *Parks*, *ante*, 199, 202. Am. Law Inst. Restatement: Agency, § 22. It is also settled that, where one deals with the agent of another without knowledge of any limitation

on his ostensible authority, the person so dealing with the agent has a right to rely upon his ostensible authority. *Federal National Bank* v. *O'Connell*, 305 Mass. 559, 565. In the present case, even had the defendant Gleason taken the precaution to examine the written instrument filed with the bank conferring actual authority upon the plaintiff's husband to draw checks on the account in question (and we do not intimate that he was called upon to do so), no limitation upon the general authority there conferred would have appeared.

The plaintiff's contention that the form of the check as matter of law was notice to Gleason of infirmity apparent upon the face of the instrument cannot be sustained. The fact that the form of a check reveals an agency does not require the payee to attribute lack of authority to the agent. The rule that the form of an instrument puts the transferee on notice is applied where the form reveals a possible want of authority by a fiduciary. Illustrative of this rule are instances where a municipal officer attempts to use municipal funds for his own benefit, or a trustee is applying trust funds to his own use. See *Newburyport* v. *Fidelity Mutual Life Ins. Co.* 197 Mass. 596, 603. In that case the city treasurer drew a check on the city and delivered it directly to his creditor in payment of his personal debt, and it was held that the check was invalid since the payee was charged with notice of a possible want of authority of the treasurer. Other examples of the application of the rule just referred to may be found in *Franklin Savings Bank* v. *International Trust Co.* 215 Mass. 231, 233, and in *Johnson & Kettell Co.* v. *Longley Luncheon Co.* 207 Mass. 52, 55–56. See *Geary* v. *Blomerth*, 309 Mass. 91, 99, and cases cited. *Childs, Jeffries & Co. Inc.* v. *Bright*, 283 Mass. 283, 294, and *Proctor* v. *Norris*, 285 Mass. 161, 165, relied upon by the plaintiff, are distinguishable on the facts from the instant case. Those cases dealt with instruments drawn by corporate officers on corporate funds to pay private debts.

In the present case, we are of opinion that the facts found by the judge are not inconsistent and that they support his decision.

The plaintiff has not contended that she should have been

given relief as against her defendant husband. Her only contention as to relief is that the decree entered in the court below should be reversed and that the entry of a final decree should be ordered "establishing the indebtedness of the . . . [defendant] Gleason to her, and reaching and applying the various assets and properties described in the report of material facts . . . as belonging to said Gleason." We do not feel called upon, therefore, to consider the question of the liability of the plaintiff's husband to account to her for the funds in question.

*Decree affirmed, with costs to the*
*defendant Gleason.*