THE GRAMATAN NATIONAL BANK AND TRUST COMPANY OF BRONXVILLE *vs.* HOWARD MOODY & another.

Hampshire.    September 20, 1950. — November 1, 1950.

Present: QUA, C.J., LUMMUS, SPALDING, WILLIAMS, & COUNIHAN, JJ.

*Bills and Notes*, Holder in due course.

In an action by a bank against the owner of a house on a negotiable promissory note indorsed to and discounted by the plaintiff after it had been given by the defendant to a contractor in consideration of insulating work to be done by the contractor, which never was completed, a finding that the plaintiff had "knowledge of such facts that . . . [its] action in taking the instrument amounted to bad faith" within G. L. (Ter. Ed.) c. 107, § 79, was not warranted by certain information revealed on the face of a credit application and certificates of completion of the work in the possession of the plaintiff before it discounted the note, even if such documents showed that the plaintiff had grounds for suspecting that the contractor was negotiating the note to it before the completion of the insulating work contrary to his arrangement with the defendant.

CONTRACT.    Writ in the District Court of Hampshire dated August 3, 1948.

Upon removal to the Superior Court, the action was tried before *O'Brien*, J.

*C. V. Ryan*, for the plaintiff.

*B. G. Brown*, for the defendants.

SPALDING, J.    This is an action of contract in which the plaintiff seeks to recover the unpaid balance of a note. The case was tried to a jury, and at the close of the evidence the plaintiff and the defendants presented motions for directed verdicts. The plaintiff's motion was denied and that of the defendants was granted, and the case comes here on the plaintiff's exceptions to these rulings.

The facts, most of which were not in dispute, were these. The principal sum set forth in the note declared on is $551.90,

payable in thirty-six monthly instalments of $15.33, the first instalment being due sixty days after the date of the note. The note, which is negotiable in form, calls for the payment of the entire unpaid balance if any instalment is not paid when due. It bears the date of August 28, 1947, and was given in these circumstances. On August 26, 1947, one Pease, a representative of Keystone Home Insulation Co., Inc., hereinafter referred to as Keystone, called on the defendants, who are husband and wife, at their home in North Amherst and entered into an agreement with them to have their house insulated by Keystone. In order that their note might be insured under the provisions of the national housing act (U. S. C. [1946 ed.] Title 12, § 1701 et seq.), both defendants at that time signed a paper entitled "FHA Title I Credit Application" addressed to the plaintiff, a national bank with a place of business in Bronxville, New York. Some of the blanks in the application were filled in in blue ink and others in green ink. The defendant Nellie Moody testified that only the former were filled in in her presence, and that she did not know who filled in the latter. No contention is made, however, that any of the information contained in the application was incorrect. Although the note bore the date of August 28, 1947, both defendants testified that it was executed on August 26, and there was no evidence to the contrary. On the latter date a written contract covering the work to be done and the price was executed by Keystone and the defendant Howard Moody. Work under the contract was begun on August 29, 1947, and on that day the attic was insulated. This was only a part of the work called for by the contract. At that time one of the workmen presented to Nellie Moody a printed form entitled "FHA Title I Borrower's Completion Certificate" which she signed in pencil. When she signed it the blanks were not filled in and it was undated. This certificate contained a printed statement to the effect that all the work had been satisfactorily completed on the premises indicated in the credit application. Above the space intended for the borrower's signa-

ture appear the words in large type "Notice to Borrower" which are followed by these words: "Do not sign this Certificate until the work or the materials have been satisfactorily completed or delivered. The selection of a dealer, the acceptance of materials used and work performed is YOUR responsibility. Neither the FHA nor the financial institution guarantee the material or workmanship or inspect the work performed." The appropriate blanks had been filled in at the time the certificate was offered in evidence. The certificate was dated September 2, 1947. There was also introduced in evidence a paper entitled "FHA Title I Dealer's Completion Certificate." This was addressed to the plaintiff and was signed by an officer of Keystone. It was dated August 28, 1947, and recited that in consideration of the plaintiff's acceptance of the defendants' note "I (we) hereby certify that . . . All articles and materials contracted for have been furnished and installed and all work fully completed . . . [at the defendants' house] which constitutes the entire consideration for which the above note was executed and delivered by the maker." It also certified the genuineness of the signatures of the borrowers on the note and on the borrower's completion certificate, and that the latter was signed after the work had been fully completed.

There was evidence that on September 2 or September 4, 1947, the note was indorsed in blank by Keystone and delivered to the plaintiff for value. Prior to the discounting of the note by the plaintiff it had in its possession the signed completion certificates of the borrower and the dealer. There was evidence that the insulation work described in the contract was not completed. That the defendants have paid only five instalments on the note, amounting in all to $76.65, is not disputed.

No contention is made that the note in question was not negotiable, and the case apparently was tried below and has been argued in this court on the footing that the rights of the parties are to be governed by the law of this Com-

monwealth.[1] We shall deal with the case accordingly. The sole contention of the defendants is that the plaintiff is not a holder in due course because it had actual knowledge of such facts that its action in taking the note amounted to bad faith. G. L. (Ter. Ed.) c. 107, § 79. In support of this contention the defendants argue that the credit application was signed on the evening of August 26; that it could not have reached the plaintiff until August 27 and that in all probability, considering the distance from North Amherst to Bronxville, the plaintiff did not receive it until August 28; and that as the application recited that the "improvement planned" was insulation at an estimated cost of $480 the plaintiff could not in good faith accept on its face the statement in the dealer's completion certificate, dated August 28, that the work had then been completed. And it is also urged that if the plaintiff had exercised good faith it would have known from the dealer's certificate before September 2 or 4, when the note was discounted, that it was impossible for Keystone to certify truthfully on August 28 the genuineness of the signature on the borrower's completion certificate not signed until August 29 (according to Nellie Moody) or until September 2 (according to the face of the certificate).

The decisive issue, as the defendants concede, is whether or not the plaintiff was a holder in due course. We are of opinion that it was and that the denial of its motion for a directed verdict was error. On this record the only possible basis for contending that Keystone's title was defective within G. L. (Ter. Ed.) c. 107, § 78, is that the note was negotiated in "breach of faith" prior to the time intended by the parties when the note was made and delivered, namely, the completion of the work. Under § 79 "To constitute notice of an infirmity in the instrument or defect in the title of the person negotiating the same the person to

---

[1] It has generally been held that questions arising from notes given in conjunction with loans insured under the national housing act are to be determined by State law. *United States* v. *Hansett,* 120 Fed. (2d) 121 (C. C. A. 2). *United States* v. *Novsam Realty Corp.* 125 Fed. (2d) 456 (C. C. A. 2). *United States* v. *Dobbins,* 139 Fed. (2d) 169 (C. C. A. 5).

whom it is negotiated must have had' actual knowledge of
the infirmity or defect, *or knowledge of such facts that his
action in taking the instrument amounted to bad faith.*"[1]  Only
the italicized portion of the statute need concern us because
the evidence would not warrant a finding that the plaintiff
had actual knowledge of any infirmity or defect in the note.
"The rights of a holder of a negotiable instrument are to be
determined by the simple test of honesty and good faith,
and not by a speculative issue as to his diligence or negli-
gence."  *Macklin* v. *Macklin,* 315 Mass. 451, 455.  Sus-
picion by the plaintiff, or even reasonable cause to know,
that the facts were not such as Keystone represented them
to be was not the equivalent of knowledge which would
show bad faith on the part of the plaintiff in taking the note.
*Reynolds* v. *Park Trust Co.* 245 Mass. 440, 446.  *Russell* v.
*Bond & Goodwin Inc.* 276 Mass. 458, 464.  The plaintiff as
the holder of a negotiable instrument "is deemed prima
facie to be a holder in due course," and the burden of estab-
lishing that Keystone's title was defective was on the de-
fendants.  If they failed to sustain this burden, no burden
rested on the plaintiff to support by evidence its prima
facie case that it was a holder in due course.  G. L. (Ter.
Ed.) c. 107, § 82.  *Beacon Trust Co.* v. *Ryder,* 273 Mass.
573, 575–576.  We are of opinion that the evidence here
failed to show knowledge on the part of the plaintiff of
"such facts that . . . [its] action in taking the instrument
amounted to bad faith."  Conceding, without deciding,
that the evidence would warrant a finding that the plaintiff
had grounds for suspecting that Keystone negotiated the
note "in breach of faith, or under such circumstances as
amount to a fraud" (§ 78) — and that is the very most
that could have been found — it would not be the equivalent
of knowledge which would show bad faith on the part of the
plaintiff in taking the note.  *Reynolds* v. *Park Trust Co.*
245 Mass. 440, 446.  *Russell* v. *Bond & Goodwin Inc.* 276
Mass. 458, 464.  *Standard Acceptance Corp.* v. *Chapin,* 277
Mass. 278, 282.

[1] Emphasis supplied.

It follows that the plaintiff's exceptions are sustained and judgment is to be entered for the plaintiff.

*So ordered.*