WALTER H. DOLPHIN *vs.* A. C. LEWIS LEATHER COMPANY
& others.

Essex.    April 5, May 17, 1929. — November 25, 1929.

Present: RUGG, C.J., CROSBY, PIERCE, WAIT, & SANDERSON, JJ.

*Corporation,* Officers and agents. *Equity Jurisdiction,* Minority stock-
holders' bill. *Interest.*

In a suit in equity by a minority stockholder in a Massachusetts corpora-
tion in behalf of himself and of all other stockholders against the
controlling stockholder and director and others to recover for the cor-
poration sums of money wrongfully appropriated by the principal de-
fendant, it appeared that the corporation was organized to take over
the assets and business of the principal defendant; that he had agreed
that the plaintiff should be a stockholder; that, after organization,
he offered in writing to sell such business to the corporation for its
stock, the corporation to assume the liabilities of the business in ac-
cordance with a submitted statement, and that the offer was accepted
by vote of directors of the corporation.    After such acceptance, when
the books of the corporation were opened, the defendant, in fraud of
the corporation, caused to be prepared a second statement with addi-
tional items of credit to himself amounting to over $8,000 added to the
debts to be paid by the new corporation.    A master found that a second
defendant, employed by the principal defendant as accountant and
for a time acting as clerk and a director of the corporation, prepared
both statements under the direction of the principal defendant and
knew of payments of interest on the $8,000 to the principal defendant
and of meetings of directors to fix salaries and to pay fraudulent divi-
dends which were held without notice to the plaintiff, who was a
director.    The master further found that the second defendant did not
participate in the misappropriation of funds by the principal defendant
and that, while he was cognizant of the changes made in the second
statement of liabilities, there was no evidence that he knew of the
agreement whereby the principal defendant "was to relinquish part
ownership of the corporation to the plaintiff."    In the final decree, the
suit was dismissed as to the second defendant.    The plaintiff appealed.
*Held,* that there was not sufficient evidence to require a finding that
the master and the judge were clearly wrong in their conclusions that
the second defendant did not participate in the wrongdoings of the
principal defendant.

A third defendant in the suit above described was the wife of the principal
defendant and, while clerk of the corporation, had attested records of
meetings of the directors at which unwarrantedly large salaries were
voted to the principal defendant and a salary was voted to her, which

with her consent was paid to the principal defendant, but which her services were not worth. As clerk she also attested records of meetings of the directors, held without notice to or knowledge of the plaintiff, at which unlawful and fraudulent dividends were voted; these afterwards were paid to the principal defendant. It did not appear that at the time of any misappropriations she was *de jure* or *de facto* a director or to what extent, if at all, she participated in the misappropriation of the assets of the defendant corporation; and it was *held*, that a final decree dismissing the bill as to her was not improper.

In the suit above described, it appeared that notes of the corporation given to the principal defendant for loans to it bore interest at the rate of six per cent, but that he collected twelve per cent thereon. The final decree allowed him a credit of six per cent. The plaintiff contended that no interest should be allowed because the money was lent to the corporation for a fraudulent purpose; but it was *held*, that, upon all the facts shown, the allowance of six per cent was not error.

THREE BILLS IN EQUITY, the first filed in the Superior Court on December 5, 1922, and afterwards amended and numbered 2614 on the equity docket in the county of Essex, the defendants in the amended bill being A. C. Lewis Leather Company, Arthur C. Lewis, Lena A. Lewis, E. P. Hall and Frederick L. Small as defendants; the second bill was filed in the same court on May 22, 1925, numbered 3226 on said equity docket and named as defendants the same corporation and the Lewises; the third bill was filed in the same court on November 20, 1925, numbered 3331 on said equity docket and naming as defendants the same corporation, the Lewises, Walter H. Newhall, Florence P. Folger and Alma Robertson.

The bills are described in the opinion.

References to, proceedings before and material findings by a master, as well as proceedings relating to receivers of the defendant corporation appointed on October 7, 1925, are described in the opinion.

The suits were heard by *Weed*, J., upon the pleadings, and reports by the master and exceptions thereto, and he filed a statement of findings and rulings, which closed with the following "recapitulation":

The defendant A. C. Lewis is accountable for the following sums, with interest to September 15, 1928 in each instance as indicated, viz: —

Items

| | | | |
|---|---|---|---|
| (1) | Interest on $8000. note | $ 960. | |
| (2) | Debt of $467.65 | 467.65 | |
| | | 1427.65 | |
| (3) | Interest from October 25, 1916 | 1018.36 | |
| | | | $2,446.01 |
| (4) | Accounts receivable withdrawn by Lewis | 270. | |
| (5) | Interest from Sept. 9, 1915 | 210.60 | |
| | | | 480.60 |
| (6) | 14 per cent dividend on 250 shares | 3500. | |
| (7) | Interest. from Jan. 17, 1917 | 2450. | |
| | | | 5,950. |
| (8) | 10 per cent dividend on 250 shares | 2500. | |
| (9) | Interest from July 20, 1917 | 1672.91 | |
| | | | 4,172.91 |
| (10) | 10 per cent dividend on 500 shares | 5000. | |
| (11) | Interest from June 4, 1918 | 3084.16 | |
| | | | 8,084.16 |
| (12) | Salary of Lena Lewis | 3125. | |
| (13) | Interest from July 3, 1919 | 1725.75 | |
| | | | 4,848.75 |
| (14) | Chalmers automobile | 1,250. | |
| (15) | Interest from May 31, 1916 | 921.88 | |
| | | | 2,171.88 |
| (16) | Cadillac automobile | 1,200. | |
| (17) | Interest from Dec. 31, 1920 | 554.80 | |
| | | | 1,754.80 |

Items

| | | | |
|---|---|---|---|
| (18) | Goodwin loans | $2,133.70 | |
| (19) | Interest from Dec. 15, 1922 | 736.13 | |
| | | | $2,869.83 |
| (20) | Excessive interest on loans | 6,465.41 | |
| (21) | Interest from Dec. 15, 1922 | 2,230.57 | |
| | | | 8,695.98 |
| (22) | Insurance premiums on personal policies | 697.40 | |
| (23) | Interest from Aug. 23, 1916 | 504.45 | |
| | | | 1,201.85 |
| (24) | Taxes on personal real estate | 364.72 | |
| (25) | Interest from Dec. 15, 1922 | 125.83 | |
| | | | 490.55 |
| (26) | Payment for liquors | 4,093. | |
| (27) | Interest from Oct. 4, 1922 | 1,460.52 | |
| | | | 5,553.52 |
| (28) | Retroactive salary | 2,300. | |
| (29) | Interest from Dec. 31, 1922 | 787.36 | |
| | | | 3,087.36 |
| (30) | Excess salary | 7,200. | |
| (31) | Interest from Oct. 7, 1925 | 1,269.60 | |
| | | | 8,469.60 |
| (32) | Unjustifiable interests payments | 1,102.10 | |
| (33) | Interest from June 30, 1925 | 212.15 | |
| | | | 1,314.25 |
| (34) | Insurance premiums | 202.50 | |
| (35) | Interest from Oct. 7, 1925 | 34.70 | |
| | | | 237.20 |
| (36) | Excess expense | 408. | |
| (37) | Interest from Oct. 7, 1925 | 71.40 | |
| | | | 479.40 |

Items
|  |  |  |  |
|---|---|---|---|
| (38) | "Burlap bags" | $1,434.30 | |
| (39) | Interest from Oct. 7, 1925 | 252.91 | |
| | | | $1,687.21 |
| (40) | Improper payments to sales- | | |
| | men | 1,757.16 | |
| (41) | Interest from Oct. 7, 1925 | 304. | |
| | | | 2,041.16 |
| (42) | Counsel fees | 2,350. | |
| (43) | Interest from Oct. 7, 1925 | 402.63 | |
| | | | 2,752.63 |
| | | | 88,789.65 |

And shall be allowed for loans found to have been actually made by said Lewis to the corporation and liquidated by the invalid issues of additional stock        50,800.
And shall pay to the receiver of the corporation the sum of        $17,989.65
with interest from September 15, 1928 to the date of payment.

An interlocutory decree was entered overruling exceptions by plaintiff and defendants to, and confirming, the master's report in the first suit excepting in a particular not now material. The plaintiff appealed from that decree.

Thereafter, the suits were heard further by *Lummus,* J., by whose order interlocutory decrees were entered, as previously ordered by *Weed,* J., overruling exceptions to, and confirming, the master's report in the second and third suits. A further interlocutory decree was entered by order of *Lummus,* J., reciting: ". . . it appearing that said causes involve the same subject matter and that the two later causes are really supplementary to the first one, and that said causes have been heard together and have been disposed of by a single order for a single decree, filed by Mr. Justice Weed on October 5, 1928, thereupon, upon consideration thereof, it is ordered, adjudged and decreed

that said causes be and hereby are fused into a single cause and that said single cause shall bear the docket number 2614, and that papers hereinafter filed in said cause, so consolidated, shall bear said docket number."

A final decree then was entered as follows:

"1. That the bill No. 2614, Eq. be and hereby is dismissed as against the defendants Lena A. Lewis and Frederick L. Small; that the bills No. 3226, Eq. and 3331, Eq. be and hereby are dismissed as against the defendant Lena A. Lewis, so far as they charge her with participating in the misappropriation of monies of the defendant corporation; and that the said bills be and hereby are dismissed as against the defendant Alma Robertson.

"2. That the court doth declare that the defendant E. P. Hall has no interest in, and no valid claim or demand against, the defendant corporation.

"3. That the defendant Arthur C. Lewis is accountable to and obligated to repay and restore to the defendant corporation in the sum of $17,988.65, with interest thereon at the rate of six per cent per annum, from September 15, 1928, to the time when the same shall be paid;

"4. That said Arthur C. Lewis shall pay said sum of $17,988.65, together with interest thereon as aforesaid, together with costs of these three suits, amounting to $128.90 to Harry D. Linscott, Esquire, receiver of the defendant corporation, within twenty days after the entry of final decree in this cause; . . ."

[There then followed paragraphs 5 to 15, inclusive, dealing with equitable relief to be given, should the defendant Lewis not comply with the above orders.]

"16. That as it is impossible to settle the accounts of the receiver or to divide the assets of the corporation among the creditors and stockholders until after the performance of this final decree, that the causes be retained for further proceedings supplementary to this final decree, and not involving any further adjudication of the rights settled by this final decree."

There was no appeal by any defendant.

The plaintiff appealed from the interlocutory decree

sustaining one exception of the defendant to the master's report in the first suit and from the final decree.

In his brief and argument before this court, the plaintiff contended that the Superior Court erred in dismissing the suits as to the defendants Small and Lena A. Lewis; in allowances made as salary to the defendant Arthur C. Lewis; in credits given to the defendant Arthur C. Lewis on account of loans by him to the corporation; and in the allowance of interest at the rate of six per cent upon certain notes of the corporation to that defendant.

*H. A. Bowen,* (*J. M. Fogarty* with him,) for the plaintiff.

*A. Kobrin,* for the defendant Arthur C. Lewis, submitted a brief.

*H. D. Linscott,* receiver, *pro se,* submitted a brief.

PIERCE, J.   This is an appeal by the plaintiff from the final decree entered December 26, 1928.   The defendants did not appeal from this decree.   Originally, there were three suits involving the same subject matter, the last two being supplementary to the first one.   By decree filed December 26, 1928, they were "fused into a single cause."   The original bill, brought by the plaintiff in behalf of himself and all stockholders of the defendant corporation wishing to join therein, charged the principal defendant, Arthur C. Lewis, with misuse and abuse of the funds of the defendant A. C. Lewis Leather Company, of which he was the majority stockholder and the treasurer, to the detriment both of the plaintiff, a minority stockholder, and of the corporation itself.   The allegations of the supplemental bills covering the period from December 5, 1922, the date of the subpoena in the original bill, until October 7, 1925, the date of the appointment of receivers of the defendant corporation, are of the same general character as the original bill, and assert that in certain specified ways the defendant Lewis has continued to mulct the defendant corporation to his own enrichment, and that he has been assisted in so doing and in concealing his abstractions by acts of other individual defendants.   In the original bill the defendants Frederick L. Small and E. P. Hall were represented by counsel, but they did not appear at the hearings or testify.   The cases were referred

to a master who made two reports, one upon the first case, the other upon the second and third. The first case was heard on the question of confirming the master's report, and on July 20, 1926, an interlocutory decree was entered sustaining the defendants' objection number six, overruling all other objections of the plaintiff or defendants, and confirming the report as so modified. The plaintiff appealed from this decree on July 20, 1926.

The receivers for the defendant corporation, appointed on October 7, 1925, liquidated the assets of the corporation and by direction of the court paid a dividend of sixty per cent to the creditors whose claims were approved. A claim of the defendant Arthur C. Lewis for $10,909.97 is in dispute, and is involved in this litigation. "After said dividend was paid, defendant's counsel died and plaintiff's counsel resigned as receiver, and a new receiver was appointed. The latter has in hand a substantial balance in cash, which, however, is insufficient to pay the creditors in full if the Lewis claim is allowed. The present receiver, by direction of the court, has participated in the hearings since his appointment."

Subsequently, a hearing was had on confirmation of the master's report in the second and third cases, and also a hearing on all three cases on the decrees to be entered upon the pleadings and facts found by the master. On December 26, 1928, interlocutory decrees were entered overruling the objections of the plaintiff and the defendant Arthur C. Lewis, and confirming the reports. Neither the plaintiff nor the defendants appealed from these interlocutory decrees. A final decree was entered on December 26, 1928, and the plaintiff alone appealed therefrom.

In substance the master found, and the defendant Arthur C. Lewis admits, that the defendant corporation was organized on September 8, 1915, to take over the "shoe stock" business of Arthur C. Lewis, and that before the incorporation the plaintiff was an employee of Lewis and had been associated with him in the conduct of his business. Just prior to September 8, 1915, Lewis told the plaintiff that he was about to incorporate his business for $25,000, and

that if the plaintiff would continue in the employ of the new corporation he would give him stock to the value of $1,000. The plaintiff rejected this proposition and Lewis finally agreed to give him stock to the value of $2,000 outright and, in addition, stock to the value of $3,000 for which he should pay out of anticipated dividends or otherwise, at his election; he also asked for and was given the privilege of buying additional stock from time to time.

On September 8, 1915, the plaintiff and the defendants A. C. Lewis, Frederick L. Small and Lena A. Lewis, wife of Arthur C. Lewis, signed an agreement of association which recited, in substance, that the defendant corporation was to be organized for stated purposes, broad enough to include the business up to that time carried on by Lewis; the total stock was to be $25,000, consisting of two hundred fifty shares of common stock having a par value of $100 each. The plaintiff, Arthur C. Lewis, and Small, as the three incorporators, each subscribed for one share of stock. The first meeting of the corporation was then held. By-laws were adopted, Lewis and Small were elected treasurer and clerk respectively, and the plaintiff, Lewis and Small were elected directors. Immediately thereafter the first meeting of the directors was held. Lewis was elected president and the directors were authorized to prepare and file articles of organization with the commissioner of corporations. At an adjourned meeting of the directors held one hour thereafter, Lewis submitted to the directors in writing the following proposition: "I hereby offer, in consideration of the issue, transfer and delivery to me of two hundred and forty-seven shares of the stock of the A. C. LEWIS LEATHER COMPANY, to sell, assign and transfer to said Company the business which I have heretofore conducted under the name of the A. C. Lewis Leather Company, together with all the assets of said business of whatever nature; the A. C. LEWIS LEATHER COMPANY to assume all liabilities of said business at present outstanding." The offer was accepted, and the president and treasurer were authorized, upon receipt of duly executed assignments and bills of sale transferring the assets, to issue to

Lewis certificates for two hundred forty-seven shares of stock. These shares, together with the three subscribed for by the incorporators, comprised the entire issue authorized. The directors signed and swore to the articles of organization in accordance with the vote mentioned.

The articles recited that three shares of the stock were to be issued for cash in full and that the remaining two hundred forty-seven shares were to be issued "in payment of the business now conducted by Arthur C. Lewis under the name and style of A. C. Lewis Leather Company, the assets and liability of which business are as follows:" Then followed a statement of assets and liabilities in figures which shows a balance of $24,700.00. This statement was prepared by the defendant Small, who had been employed to make an audit of the business for the purpose of its incorporation. With this in view, Small had prepared two statements as of August 31, 1915, one showing the condition of Lewis's business before incorporation, and one showing the effect of the proposed incorporation. These statements are set out at length in the master's report. There is a difference in the items of cash of $300, which is accounted for by the payment in cash for the three shares subscribed for by the incorporators. A comparison of these two statements discloses that the net worth of Lewis's business before incorporation was established as $33,728.48, or $8,728.48 more than the amount for which it was incorporated. This difference was accounted for in the second statement by adding $8,000 to notes payable, $458.48 to accounts payable, and by deducting $270 from accounts receivable.

When the books of the new corporation were opened, Lewis was credited with the two items of $8,000 and $458.48, and on September 9, 1915, as treasurer of the corporation, he issued its note to himself for the $8,000. It is the defendants' contention that the $8,000 and the credit of $728.48 represented an actual excess of the value of the business conducted by the defendant A. C. Lewis as an individual, and transferred to the corporation over and above the agreed value of the shares of the stock that

were issued to him therefor; that the articles of organization and the subsequent vote of acceptance constitute a binding written contract, merging the prior talks and writings, and that neither the plaintiff nor the defendant corporation can now attack the validity of the note and credit because: "(*a*) The note having been drawn in 1915 and the bill not having been filed until 1922, the plaintiff and the defendant corporation are each barred by the statute of limitations and by laches from asserting the invalidity of either the said note or the said credit. (*b*) The plaintiff's signing the articles of organization, and his voting as a director of the corporation in favor of its adoption estops him from attacking the validity of said note and credit. And, no other stockholder having objected thereto, it is deemed to have been ratified. (*c*) Inasmuch as the plaintiff was not a stockholder at the time that the transaction between this defendant and the corporation concerning said note and credit was consummated, he cannot legally attack it."

It is plain, as the master finds, that the written contract is contained in Lewis's offer to the directors and their vote of acceptance, *supra*. That offer is clear and explicit and makes no reference to the statement prepared by the defendant Small. It offers to transfer all the assets of Lewis's business in exchange for two hundred forty-seven shares of the capital stock, and the assumption by the corporation of all the liabilities of the business. The $8,000 note, the credit of $458.48, and the deduction of $270 from the accounts receivable were not liabilities of the business. The defendant Arthur C. Lewis and the plaintiff throughout the period covered by this litigation were the only *bona fide* stockholders of the defendant corporation, and Lewis, who was the treasurer, conducted the business at all times as though it were his own. The lessening of the "Present Worth" of the assets of his business, which were turned over to the defendant corporation in exchange for its stock, was a fraud on the corporation. Lewis subsequently caused the defendant corporation to pay him $960 in interest on the $8,000, and

$467.65 as representing the $458.48 plus interest. Later the $8,000 note was exchanged, with other notes, for stock. On September 9, 1915, the date on which the charter issued, the defendant corporation took possession of the business and thereafter conducted it as its own.

On September 8, 1915, certificates representing two hundred forty-eight shares of stock were issued to the defendant Lewis; and certificates representing one share each were issued to Small and the plaintiff which were transferred to the defendant Lena A. Lewis, wife of the defendant, and to Lewis. Lewis then transferred fifty shares of his stock to the plaintiff, who gave him his promissory notes for $2,000, and subsequently paid him $1,000. Between September 8, 1915, and March 31, 1919, the plaintiff purchased of the defendant one hundred six shares of the stock of the defendant corporation and paid Lewis $8,600 therefor. These shares were represented by certificates issued to the plaintiff and signed by the defendant Lewis as president and treasurer. All the certificates which the plaintiff received recited that the capital stock of the corporation was $25,000, although it had nominally been increased to $50,000 when two of the certificates were issued, and to $75,000 when the last one was issued.

The master found, and the judge ruled, that Small, who resigned as clerk on August 1, 1916, and Lena A. Lewis did not participate in the misappropriation of funds by Lewis. Respecting Small, the master found, and the judge adopted his finding, that his participation "was limited to the preparation of the above two statements at the direction of the defendant Lewis; and while he was . . . cognizant of the changes made in the second statement, there was no evidence that he knew of the agreement whereby Lewis was to relinquish part ownership of the corporation to the plaintiff." The evidence, so far as it is reported, discloses that the statements were drafted or computed on or before August 31, 1915, and that the proposal of Lewis that the plaintiff should remain in the employ of the defendant corporation when organized was made to the plaintiff by Lewis just prior to September 8, 1915. The facts that Small became a director

and clerk of the defendant corporation on September 8, 1915, and held these offices until August 1, 1916, that meanwhile the corporation paid Lewis interest on the $8,000 note, said interest marked "journal entry," and that Small knew that meetings to fix salaries and pay dividends were called and held without notice to the plaintiff, are cogent, but are not sufficient evidence to require a finding that the master and the judge were clearly wrong in their conclusions that Small did not participate in the wrongdoings of Lewis.

Lena A. Lewis succeeded the defendant Small as clerk on August 1, 1916. Thereafter she acted as clerk at all meetings of the corporation, and as clerk of the board of directors attested the records of directors' meetings shown by the record book of the directors to have been held in January 1917, 1918, 1919, 1920, 1921 and 1922, fixing the salary of Arthur C. Lewis at $200 per week. In spite of these purported votes authorizing a salary of $200 per week, Lewis actually drew a salary of $125 a week, except for three weeks when it was $150, until July 1916, when an "executive's salary" account was opened, against which a straight charge of $125 per week was made. The "executive's salary" continued until February, 1917, when it was discontinued and the old method revived. In October, 1917, the amount drawn as "selling expense" dropped to $50 per week, making Lewis's actual salary $100, and it remained at that figure until October, 1918, when it was again increased to $125. After July, 1918, until December 5, 1922, it was impossible to determine from the books that his salary was more than $50 per week, because "whatever he drew under that head was included in a lump sum charged up each week to 'selling salaries' which covered not only money paid to Lewis but also that paid to all other salesmen." Lena A. Lewis, at a directors' meeting alleged to have been held on January 14, 1917, in the absence of the plaintiff who had not been notified of its calling, attested as clerk a record vote of the directors of a salary to herself of $25 per week, which aggregated $3,125. This salary was drawn and retained by her husband with her assent until July 3, 1919, when it was discontinued. Her clerical services were found by the master not to be

reasonably worth $25 per week. She also purported to record votes of the directors, in alleged meetings at which, without notice to the other director and without his knowledge, dividends were voted, capital increased, and stock issued to the defendant Lewis. "Funds of a corporation can be lawfully used for corporate purposes only, and, if misappropriated by the directors, they and whoever with notice participates with them, are jointly and severally liable to the corporation for the loss and damage." *Corey* v. *Independent Ice Co.* 226 Mass. 391, 393. *Beaudette* v. *Graham*, 267 Mass. 7, 12. *Calkins* v. *Wire Hardware Co.* 267 Mass. 52, 60, 66, and cases cited. The law thus stated is not applicable to the acts of the defendant Lena A. Lewis because it does not sufficiently appear that at the time of any misappropriations she was *de jure* or *de facto* a director or to what extent, if at all, she participated in the misappropriation of the assets of the defendant corporation.

The defendant Arthur C. Lewis, who was found to have conducted the business as though it were solely his own, without legal meetings of stockholders or directors and without knowledge of or notice to the plaintiff who was the only other *bona fide* stockholder during the period covered by the litigation, caused three increases in capital stock of the defendant corporation at meetings which were attended by himself and the defendant Lena A. Lewis only. That is, the capital stock was increased by their votes on October 23, 1916, from $25,000 to $50,000; on November 13, 1917, from $50,000 to $75,000; and in November 1920, from $75,000 to $90,000. The votes recorded, purporting to authorize the increases, and the certificates filed were false. All the additional stock was issued to the defendant Arthur C. Lewis. The alleged votes authorized the issue of the new stock for cash; it was, in fact, issued in exchange for notes of the corporation issued in behalf of the corporation by Arthur C. Lewis as its treasurer, without proper authorization.

Five dividends were paid by the corporation, the first on January 19, 1916, in pursuance of a vote passed at a stockholders' meeting, the second on July 12, 1916, in pursuance

of a vote passed at a directors' meeting. In each instance the plaintiff was paid in proportion to the stock then held by him. On January 17, 1917, a third dividend was paid amounting to fourteen per cent on a capital of $50,000; of this dividend $3,500 was paid to Lewis as the holder of two hundred fifty additional shares, and $2,800 as the holder of two hundred shares; in all, $6,300. The plaintiff, who had no knowledge of the increased capital and who had no notice or knowledge of the meeting of the directors, received $700, which he paid over to Lewis in part payment of his fifty shares of stock. The defendant Arthur C. Lewis, without notice to the plaintiff and without his knowledge, caused a fourth dividend on a capital of $50,000 to be declared at a joint meeting of the stockholders and directors on July 20, 1917. A total dividend of $5,000 was declared of which $4,400 was paid Lewis on that day as the holder or beneficial owner of four hundred forty shares. No dividend was then paid the plaintiff on his holdings of stock which had been increased on January 19, 1917, to sixty shares. Of the dividend paid Lewis, $2,500 represented a ten per cent dividend on his additional holding of two hundred fifty shares. The fifth dividend was declared on June 4, 1918, of $7,500 at a joint meeting of the stockholders and directors of which the plaintiff had neither notice nor knowledge. The capital had then been increased to $75,000. Of this dividend Lewis, as the holder of six hundred eighty-four shares received $6,840, and the plaintiff as the holder of sixty-six shares received $660. Of this dividend Lewis received $5,000 on the additional five hundred shares which were issued to him.

As stated more fully heretofore, Lewis, under cover of a salary to Lena A. Lewis between February 2, 1917, and July 3, 1919, caused the corporation to pay him $25 a week, a total of $3,125. He also, without authority, received in the spring of 1916, for the transfer of a Chalmers automobile, $1,250. On December 31, 1920, he was credited on the books of the corporation by his own direction with $3,700 as the price of a Cadillac automobile which he had purchased for the corporation in September, 1917, for

$2,500. This credit was a manifest overcharge of $1,200. Between August 31, 1918, and October 26, 1921, as treasurer, and without the authority of the directors or knowledge of the plaintiff, he loaned to a salesman $5,291.60 of which a balance remained unpaid of $2,133.70 at the time of this suit. Lewis is chargeable with this deficit, with interest, and the court so ordered.

The report discloses, and the judge found, that the defendant Lewis paid himself interest at the rate of twelve per cent on notes which recited that the interest to be paid was to be at the rate of six per cent in advance; and that these payments were excessive in the amount of $6,465.46. As respects the payment of interest on these loans, which was allowed by the judge at the rate of six per cent, the plaintiff contends that the judge erred in the allowance of any interest, because the money was loaned to the corporation for a fraudulent purpose. We think, however, upon all the facts that the judge rightly could allow the interest he did, which was not in excess of the rate of interest then charged by banks.

On the findings, the ruling was clearly right that Arthur C. Lewis was accountable for $697.40 for premiums paid by the corporation on two life insurance policies on the life of Lewis, with interest from August 23, 1916. The judge also found rightly that Lewis was chargeable with $364.72 which was paid by the corporation on account of taxes assessed on real estate owned by Lewis personally. On the facts found by the master the judge correctly ruled as follows: Lewis was chargeable with $4,093 withdrawn from the corporation funds for the purchase of liquors which the defendant and plaintiff intended should be used to make occasional gifts to customers to stimulate trade, with interest from October 4, 1922; he was accountable for $2,300 which he withdrew from the funds of the corporation on December 30, 1922, as the difference between the salary actually drawn by him in previous years and that of $200 per week which was illegally voted to him in January, 1916; from December 31, 1922, until October 7, 1925, he paid himself a salary of $200 a week, which was

$50 more than was reasonable, the excess amounting to $7,200; with unjustifiable payments of interest to himself amounting to $1,102.10 with interest from June 30, 1925; he was accountable for $202.50, covering premiums on accident and health policies on the life of one Goodwin and himself; he was chargeable with $408, an excess charge of $12 a week from December 5, 1922, to October 10, 1925, and interest should be paid thereon from October 7, 1925; he was chargeable with $1,434.30, a part of which was "unquestionably expended for liquor," with interest from October 7, 1925; he was chargeable with $1,757.16 paid as commissions or bonuses to salesmen of other companies to secure a preference in being allowed to purchase certain desirable merchandise, with interest from October 7, 1925; and he was accountable to the corporation for $2,350 which he paid counsel to defend these suits, with interest from October 7, 1925.

The findings of the master are not entirely free from inconsistencies, but taken as a whole we think the facts found warranted the conclusion reached by him, and justified the inferences of fact and the rulings made and given by the judge. It results that the decree is affirmed with costs.

*Ordered accordingly.*