EDWARD O. PROCTOR, trustee in bankruptcy, *vs.*
THOMAS E. NORRIS.

Suffolk.    October 4, 1933. — January 13, 1934.

Present: RUGG, C.J., CROSBY, PIERCE, DONAHUE, & LUMMUS, JJ.

*Trust*, Constructive. *Corporation*, Officers and agents. *Agency*, Liability
of agent to third persons. *Bills and Notes*, Validity. *Estoppel. Fraud.
Notice.*

An agent of a fiduciary who, with knowledge which charges him with
notice, receives trust property and disposes of it in a transaction
beyond the legal powers of the fiduciary, is liable as a constructive
trustee to the beneficiary.

In a suit in equity by the trustee in bankruptcy of a corporation to
recover funds alleged to have been diverted wrongfully from the cor-
poration to the defendant, it appeared that the president of the cor-
poration also was its treasurer and one of four directors and with his
wife owned a majority of its stock; that, while the corporation
observed the formality of holding meetings of the stockholders and
directors, he was in complete control and the other directors knew
nothing about the corporate business except what he occasionally chose
to tell them; that he also was interested equally with a third party in
a second corporation which was in financial difficulties; that he stated
to the defendant that he wished to pay some of the creditors of the
second corporation out of his own funds in such a way that the third
party would be under obligation to pay his share, and asked the defend-
ant to receive from him funds for that purpose, deposit them in an
account in the defendant's name as trustee, pay such creditors there-
from and receive from the third party notes of the second corporation
for the amount of the payments; that the defendant undertook the task
and received from the one who was president and treasurer of the first
corporation its checks on its funds signed by the treasurer and payable
to the defendant, some of them being certified, believing them to be
private funds of that officer; and that the defendant observed the
signature on the checks and, although he acted in good faith and even
was ignorant as to whether the maker was or was not a corporation, he

easily could have discovered the truth. There was a decree for the plaintiff. The defendant appealed. *Held*, that

(1) Since the defendant knew that the checks were drawn for a purpose unconnected with the business of the first corporation, he was charged with notice that its officer had no right to draw them;

(2) Personal benefits to the defendant from the transaction were not an essential to recovery by the plaintiff;

(3) The fact that some of the checks were certified before being given to the defendant did not entitle him to shut his eyes to the apparent wrongfulness of the act of the first corporation's officer in drawing them;

(4) Failure of the directors of the first corporation to perform their duties could not give its officer any right to divert corporate funds, nor estop that corporation, its stockholders or the plaintiff to seek their restoration;

(5) Since the defendant came into possession of funds which apparently and in fact belonged to the first corporation and assisted its officer in diverting them to an unlawful use, the decree was right.

BILL IN EQUITY, filed in the Superior Court with a writ of summons and attachment dated April 2, 1931, and described in the opinion.

The suit was referred to a master. Material facts found by the master are stated in the opinion. By order of *Whiting*, J., a final decree was entered granting the plaintiff the relief sought. The defendant appealed.

*F. R. MacKenzie*, for the defendant.

*E. O. Proctor*, for the plaintiff.

LUMMUS, J. This suit is brought by the trustee in bankruptcy of Phoenix Bond & Mortgage Company, a Massachusetts corporation, to recover funds alleged to have been wrongfully diverted from the treasury of the corporation.

In the fall of 1927, one MacClaskey, who died on December 14, 1930, and one Cashman were substantially equal owners of a Massachusetts corporation known as Hodgdon, Cashman Company, which was doing business as a stockbroker. MacClaskey also controlled another Massachusetts corporation engaged in the same business, Phoenix Bond & Mortgage Company, of which he was president, treasurer, one of four directors, and with his wife the holder of a majority of the capital stock. Two of the other three directors were mere employees, and the third was the attorney for MacClaskey. Although Phoenix Bond & Mort-

gage Company observed the formality of holding meetings of stockholders and directors, MacClaskey was in complete control of the corporation, and the other directors knew nothing about it except what MacClaskey occasionally chose to tell them.

Hodgdon, Cashman Company was in financial difficulties, some of its customers were asserting claims against MacClaskey and Cashman individually as well as against the corporation, and money was needed to satisfy these claims. In December, 1927, MacClaskey called upon the defendant, who had recently been admitted to the bar, and said that he wished to pay some of the creditors of Hodgdon, Cashman Company out of his own funds in such a way that Cashman would be obligated to repay his share. MacClaskey asked the defendant to receive from him funds with which to pay creditors of Hodgdon, Cashman Company, deposit them in a bank account which the defendant already had in the name of "Thomas E. Norris, Trustee," draw checks in favor of creditors as directed by MacClaskey, and receive from Cashman notes of Hodgdon, Cashman Company for the amount of the checks. MacClaskey said that he wished Cashman to think that the defendant was lending the money to Hodgdon, Cashman Company. The defendant undertook the task, believing that MacClaskey was using his own funds as represented.

In fact, without authority to do so from the Phoenix Bond & Mortgage Company beyond his implied authority as treasurer, MacClaskey drew checks payable to the defendant upon the bank account of Phoenix Bond & Mortgage Company, signed by himself "Phoenix Bond & Mortgage Co. Frank A. MacClaskey Treas.," had the checks certified in some instances, and delivered them to the defendant, who then carried out the plan proposed. The defendant examined the checks and observed the signatures, but believed that MacClaskey had the right to draw them. The master finds that in this way funds of Phoenix Bond & Mortgage Company to the amount of $8,094.21 were wrongfully diverted from its corporate purposes and applied to the use of MacClaskey and Hodgdon, Cashman

Company. He finds that there was no consent and no ratification by the officers or stockholders of Phoenix Bond & Mortgage Company. He finds that the defendant, though acting honestly and though ignorant as to whether that company was a corporation or not, could easily have discovered the truth.

After allowance of a credit resulting from a sale of furniture of Hodgdon, Cashman Company which had been taken as security in the transactions, the indebtedness of the defendant to the plaintiff, including interest to the date of the master's report, November 15, 1932, was established as $9,885.44, and interest thereon was awarded from that date, with costs. The defendant appealed.

No error appears in overruling the exceptions to the master's report, if indeed they are open in the absence of an appeal from the interlocutory decree.

The defendant argues the denial of his motion to recommit, but since he took no appeal therefrom that matter is not open.

From the standpoint of the defendant, it was possible that the name Phoenix Bond & Mortgage Company meant MacClaskey doing business individually in that name, with the right to draw checks for his private purposes. But that was not probable. The name suggested rather a corporation, or perhaps a partnership, and for the purposes of the principle controlling this case it is not important which. *Durrell* v. *Staples*, 169 Mass. 49. *Brickett* v. *Downs*, 163 Mass. 70. *Shapira* v. *Budish*, 275 Mass. 120, 125. *Jones* v. *Turner*, 249 Mich. 403. *Wile, Weill & Co.* v. *Denison Clothing Co.* 158 Iowa, 109. The defendant knew that the checks were drawn for a purpose unconnected with the business of Phoenix Bond & Mortgage Company, and was charged with notice that MacClaskey probably had no right to draw them. In fact MacClaskey had none. The defendant thus came into possession of funds which apparently and in fact belonged to the corporation, and assisted MacClaskey in diverting them to an unlawful use. This was a wrong to the corporation. *Johnson & Kettell Co.* v. *Longley Luncheon Co.* 207 Mass. 52. *Childs, Jeffries & Co.*

*Inc.* v. *Bright,* 283 Mass. 283. See also *Dolphin* v. *A. C. Lewis Leather Co.* 269 Mass. 132, 145; *American Agricultural Chemical Co.* v. *Robertson,* 273 Mass. 66, 83; *Tingley* v. *North Middlesex Savings Bank,* 266 Mass. 337. In those cases, it is true, the person held liable received the money for his own benefit, and not merely for the purpose of distribution to others. But personal benefit is not essential to liability. See *Newburyport* v. *Spear,* 204 Mass. 146, 150, 151; *Pratt* v. *Higginson,* 230 Mass. 256, 258. An agent of a fiduciary who receives trust property and disposes of it in a transaction beyond the legal powers of the fiduciary is liable as a constructive trustee to the beneficiary. *Andrews* v. *Tuttle-Smith Co.* 191 Mass. 461. *Barnes* v. *Addy,* L. R. 9 Ch. 244. *Lee* v. *Sankey,* L. R. 15 Eq. 204. *Morgan* v. *Stephens,* 3 Giff. 226. *Soar* v. *Ashwell,* [1893] 2 Q. B. 390. *In re Barney,* [1892] 2 Ch. 265. *Maxwell* v. *Adams,* 130 Maine, 230. *Hindmarch* v. *Hoffman,* 127 Penn. St. 284.

The case is to be distinguished from those in which the payee of a check did not receive it from the drawer corporation or its officers, but from a third person who apparently had a right to it (*McLaughlin* v. *Paine Furniture Co.* 245 Mass. 377, and cases cited; see also *Russell* v. *Bond & Goodwin Inc.* 276 Mass. 458); from those in which the person taking a corporate check in payment of the private debt of the treasurer was not the payee but an indorsee (*Johnson & Kettell Co.* v. *Longley Luncheon Co.* 207 Mass. 52, 56; *Eastern Mutual Ins. Co.* v. *Atlantic National Bank of Boston,* 260 Mass. 485, 489, 490; compare *Newburyport* v. *Spear,* 204 Mass. 146); from those in which a bank credited trust funds, knowing them to be such, to the personal account of the trustee or to the trust account, and then merely permitted the trustee to draw checks payable to himself as he had a right to do by the terms of the deposit, without taking any active part in the distribution of the funds and without knowledge that the funds were being misappropriated (*Ogden* v. *Atlantic National Bank of Boston,* 276 Mass. 130, 133; *Eastern Mutual Ins. Co.* v. *Atlantic National Bank of Boston,* 260 Mass. 485; *Clarke* v. *Pub-*

*lic National Bank & Trust Co. of New York,* 259 N. Y. 285; *Bank of Vass* v. *Arkenburgh,* 55 Fed. Rep. [2d] 130); and from those in which an agent who merely assisted in good faith a fiduciary within his legal powers was freed from liability to the beneficiary. *Knowlton* v. *Fourth-Atlantic National Bank,* 264 Mass. 181, 193; *Burbank* v. *Farnham,* 220 Mass. 514, 519; *Barnes* v. *Addy,* L. R. 9 Ch. 244; *In re Barney,* [1892] 2 Ch. 265; *Brinsden* v. *Williams,* [1894] 3 Ch. 185; Perry, Trusts & Trustees, (7th ed.) § 246.

The fact that some of the checks were certified before being given to the defendant did not entitle him to shut his eyes to the apparent wrongfulness of the act of MacClaskey in drawing them for the purpose for which they were drawn. Certification was equivalent to acceptance by the bank (G. L. [Ter. Ed.] c. 107, § 210), and by it the bank admitted "The existence of the drawer, the genuineness of his signature, and his capacity and authority to draw the instrument." G. L. (Ter. Ed.) c. 107, § 85. The Phoenix Bond & Mortgage Company admitted nothing. No one, however, questions the "capacity and authority" of MacClaskey to draw the checks; only the rightfulness of his purpose in drawing them is challenged. Certification was no assurance as to that. *Empire Trust Co.* v. *Cahan,* 274 U. S. 473, 480.

The failure of the directors of Phoenix Bond & Mortgage Company to perform their duties could not give MacClaskey any right to divert corporate funds, or estop the corporation, the stockholders or the plaintiff to seek their restoration.

*Decree affirmed with costs.*