ALLIED FREIGHTWAYS, INC. *vs.* ISADORE CHOLFIN & others.

Suffolk.    February 9, 1950. — April 11, 1950.

Present: QUA, C.J., LUMMUS, RONAN, SPALDING, & COUNIHAN, JJ.

*Corporation*, Officers and agents.   *Proximate Cause.*

One, who was the president, treasurer, and one of three directors of a corporation, the other two being his wife and a bookkeeper, and who dominated the conduct of the corporation's business to such an extent that it was hardly more than a form under which he conducted his personal business, was warrantably found to have caused corporate funds wrongfully to be expended for payment of personal obligations of himself and of his wife, and, in a suit in equity by the corporation, he was directed to repay the amount of such expenditures.

Evidence in a suit in equity by a corporation against one of its three directors, wife of a director and officer who dominated its affairs to such an extent that it was hardly more than a form under which he conducted his personal business, did not warrant a finding that neglect on the wife's part of her official duties as a director was a contributory cause of loss sustained by the corporation because of its funds being used for payment of personal obligations of her husband, and she was not chargeable jointly with him for such expenditures; but she was chargeable jointly with him for wrongful expenditures of corporate funds to satisfy her personal obligations.

BILL IN EQUITY, filed in the Superior Court with a writ of summons and attachment dated September 11, 1947.

The suit was heard by *Smith*, J.

*S. Mondlick*, for the defendants Isadore Cholfin and another.

*M. Rosenthal*, (*A. P. Rudnick* with him,) for the plaintiff.

RONAN, J.   The plaintiff by its receivers brings this bill in equity against the defendants Isadore and Sarah Cholfin, two of its directors, to establish their liability for the alleged mismanagement of the corporation, especially in the disbursement of corporate funds for their personal benefit and in causing and permitting the funds of the corporation to be paid to the defendant Boston Used Truck & Equip-

ment Co. to which, it is averred, nothing was due from the plaintiff. The other defendants were named as holding in their names property belonging to one or both of the principal defendants or as having issued stock now held by either of these defendants, which property and stock were sought to be reached for the satisfaction of any indebtedness found to be due from either of the principal defendants to the plaintiff. A final decree was entered ordering paid to the plaintiff by the defendant Isadore Cholfin $16,587.25 and costs and by the defendant Sarah Cholfin $3,086.39 and costs, and dismissing the bill as to the remaining defendants. The plaintiff and the principal defendants appealed from this decree.

The plaintiff was organized in 1943 and conducted an interstate trucking business until the summer of 1946, when because of financial difficulties it ceased to engage in business and disposed of all its assets. Isadore Cholfin, hereinafter called Cholfin, was its president, treasurer and one of its directors. The defendant Sarah Cholfin was the wife of Isadore Cholfin and was one of the directors. The remaining director during the later years was the bookkeeper for the corporation. The plaintiff's business was conducted solely by Cholfin, and the corporation was hardly more than a form which Cholfin adopted to engage in business.

The directors stood in a fiduciary relation to the corporation, and were bound to protect the assets of the corporation and to see that its funds were not expended except for corporate purposes. The use of the moneys of the corporation for the payment of their personal debts was a breach of the obligations they owed to the corporation and rendered them liable to make good the loss thereby sustained by the corporation. The evidence shows, and the judge properly found, that corporate funds to the amount of $16,587.25 were expended in payment of certain personal obligations of Cholfin and $3,086.39 for the personal benefit of his wife. The principal defendants rightly concede that none of these expenditures was used to discharge any debts of the corporation, but they contend that Cholfin had from time to time de-

posited funds with the corporation in an exchange account and as an accommodation to him so that he could pay his individual creditors by means of checks of the corporation. Cholfin testified that "all . . . [he] did was pour money into it" from the time the corporation began to do business, but when such money was delivered to the corporation or the amount claimed to have been transferred by him to it does not .appear. If any moneys were entrusted to the corporation, there is little to show that they were deposits belonging to Cholfin rather than loans or advances to the corporation. In any event, the question is not settled by showing .that some of the money was withdrawn from an account entitled "Other Advances Payable" in view of the evidence of the accountant that he would not take the ac-count at its face value until he had checked the nature of each item, and further in view of the testimony that some of the withdrawals were made from another account which was captioned "General Expense of Officers." The judge found that these defendants were liable for the sums with-drawn.. He did not believe that these funds represented deposits made by Cholfin but he did believe that they were corporate funds, improperly disbursed for the personal bene-fit of Cholfin and his wife. An examination of the evidence readily shows that the judge was not plainly wrong in coming to that conclusion.

The plaintiff contends that each of these defendants should be held jointly and severally liable for the total amount of these withdrawals, rather than limiting the lia-bility of each defendant to the amount expended for his individual benefit. Cholfin was in sole charge of the conduct of. the business of the corporation, and the disbursement of all these funds for the personal benefit of himself or his wife was a wrong committed against the corporation for which he was responsible. Accordingly he is liable to the corporation for the entire loss thereby sustained by the corporation, and the fact that a part of these funds was used for the benefit of his wife is immaterial in determining the extent of his liability and the amount for which restitu-

tion should be made by him. *Dolphin* v. *A. C. Lewis Leather Co.* 269 Mass. 132, 147. *Proctor* v. *Norris*, 285 Mass. 161. *Lydia E. Pinkham Medicine Co.* v. *Gove*, 303 Mass. 1, 9. *Durfee* v. *Durfee & Canning, Inc.* 323 Mass. 187, 202–203.

A careful examination of the testimony fails to show that Mrs. Cholfin participated with her husband in effecting these withdrawals for his benefit. A director of a business corporation is liable for his own misconduct and not for the wrongful conduct of other directors unless he joined with them in perpetrating the wrong. *Corey* v. *Independent Ice Co.* 226 Mass. 391, 393. *Guay* v. *Holland System Hull Co.* 244 Mass. 240. *General Mortgage & Loan Corp.* v. *Guaranty Mortgage & Securities Corp.* 264 Mass. 253, 261–263. *American Agricultural Chemical Co.* v. *Robertson*, 273 Mass. 66. *Spiegel* v. *Beacon Participations, Inc.* 297 Mass. 398, 411.

Mrs. Cholfin, however, did not supervise the conduct of the business or the management of the corporate affairs. She was apparently content to entrust her husband with the carrying on of the business. She seemed to have been hardly any more than a nominal director. She might have been an ordinary housewife with no business experience, so far as anything appears in the evidence. She could, of course, have made inquiries of her husband or of the bookkeeper. She might have examined the books but it is doubtful whether, unless she was skilled in accounting, she could have derived much information from the books, which were not well kept and which contained twenty-five or more slips of paper containing tabulations made by the bookkeeper in attempting to ascertain how certain entries, some of which pertained to major transactions of the corporation, should be posted. Indeed, the bookkeeper in some instances had to rely upon Cholfin as to the nature of the transaction to be recorded in the books and they did not always agree as to the information given by him to her. So far as appears, nothing tending to arouse any suspicion upon the part of Mrs. Cholfin that corporate funds were being used for her personal benefit occurred before April 18, 1946, when nine checks beginning on that day and ending on September 30,

1946, and amounting to $761.39 were issued by the corporation for the payment of her personal debts. The balance of the indebtedness with which we think she was properly charged amounting to $2,325 arose from a transaction occurring on August 19, 1946, which was subsequent to the date when the company ceased to do business.

The directors of a business corporation other than a bank are not to be held responsible for mere errors of judgment or want of prudence short of clear and gross negligence. *Murphy* v. *Hanlon*, 322 Mass. 683, 686. *Uccello* v. *Gold'n Foods, Inc. ante*, 319, 321. A director of a corporation cannot avoid liability for losses sustained by the wrongful conduct of corporate officers by showing that he had abandoned his duties as director or that his ignorance of such conduct was due to what amounted to wilful neglect of his duties. *Bowerman* v. *Hamner*, 250 U. S. 504. *Gamble* v. *Brown*, 29 Fed. (2d) 366, 373. *Ringeon* v. *Albinson*, 35 Fed. (2d) 753. *Wallach* v. *Billings*, 277 Ill. 218, 229, certiorari denied, 244 U. S. 659. Fletcher, Cyclopedia Corporations (Perm. ed.) § 1056. Mrs. Cholfin apparently did not appreciate the responsibilities connected with her position as a director, but whether, if she had acted with due diligence in supervising the conduct of the corporate business, the improper disbursements of the funds now complained of, other than those used for her personal benefit, would have been prevented is a matter of surmise and conjecture. Of the nine checks issued for her personal use, only three were issued before the corporation decided to close its business. Cholfin alone disposed of the property of the corporation and attempted to wind up its affairs. No one other than he seems to know with any degree of certainty the various transactions in which he engaged in closing up the corporation. Even the bookkeeper was not familiar with the details of what he was doing. There was considerable confusion concerning the financial affairs of the corporation. It is doubtful whether, if Mrs. Cholfin had taken steps, as soon as the first check was issued, to familiarize herself with the conduct of the business by her husband, she could have changed the situation, and it

is more doubtful whether, if she even attempted to supervise the closing up of the affairs of the corporation, she could have prevented her husband from proceeding in the manner in which he did. Of course, she should not have permitted checks to be issued for her benefit, and she is liable to account to the corporation. Upon a careful reading of the evidence, we do not think that it can quite be said that the neglect of her official duties as a director was a contributing cause of the loss sustained by the corporation by the wrongful withdrawal of its funds, save only the amounts used for her personal benefit. In *Dome Realty Co.* v. *Rottenberg*, 285 Mass. 324, a director, whose husband, also a director, conducted the business as if it were his own, was held liable for funds withdrawn by him in payment of his personal debts where a master found that she knew or ought to have known of this wrongful conduct of her husband. The instant case resembles *Hathaway* v. *Huntley*, 284 Mass. 587, 591–593, where it was held that a wife director who was negligent in permitting management of the business to be entrusted solely to her husband, another director, was not liable to the trustee in bankruptcy of the corporation to make good the loss sustained by the corporation by reason of his conduct when it was not shown that her neglect was the proximate cause of the bankruptcy although she was held liable for payments out of corporate funds made for the benefit of property owned by her.

When the corporation ceased business in the summer of 1946 it sold its trucks for $153,000. The purchaser sent a check for $20,000 in part payment to the Atlantic Finance Corporation and a second check for a similar amount to the Boston Used Truck & Equipment Co. The plaintiff contends that these two concerns received $40,000 and out of this sum they paid only $24,500 to the corporation, that after crediting the purchaser with a balance due on an overpayment amounting to $850 the corporation received $14,650 less than the purchase price of the trucks, and that the individual defendants are liable for this loss. The bookkeeper testified that Cholfin told her to charge off this amount to

Rubin Epstein as a commission for the sale of the trucks. Epstein was one of the principal members of the Atlantic Finance Corporation. Cholfin denied giving her such a direction and testified that no commission was due to this concern. There was testimony that various transactions had been conducted between the corporation and these two concerns, and there was evidence that they were not indebted to the corporation. There was also testimony that some of the purchase price was used by the corporation in settling up a dump truck business in which the corporation was interested. Whether the corporation received all that was due it from the sale of the trucks rested upon conflicting testimony. The judge was in a much better position than we are to scrutinize the witnesses and to determine their credibility. *Boston* v. *Santosuosso*, 307 Mass. 302, 343. The question for us is not what conclusion we might come to on the printed record but whether it can be properly said that the finding of the judge, that the plaintiff has not sustained the burden of proving that the corporation received less than it was entitled to out of the purchase price of the trucks, was plainly wrong. *American Employers' Ins. Co.* v. *Webster*, 322 Mass. 161, 163. We see no reason to disagree with this conclusion.

It follows that the final decree must be modified by charging Isadore Cholfin in the principal amount of $19,673.64 with interest from the date of filing of the bill and charging the defendant Sarah Cholfin in the principal sum of $3,086.39 with interest from the date of filing of the bill. The plaintiff is to have costs. The decree as modified is affirmed.

*So ordered.*