W. H. ELLIOTT & SONS CO., Inc.,
Plaintiff, Appellant,

v.

Charles J. GOTTHARDT et al.,
Defendants, Appellees.

No. 5925.

United States Court of Appeals
First Circuit.

June 29, 1962.

Stanley M. Brown, Manchester, N. H., with whom McLane, Carleton, Graf, Greene & Brown, Manchester, N. H., and O'Connell & O'Connell, Boston, Mass., were on the brief, for appellant.

Roger P. Stokey, Boston, Mass., with whom Henry B. Shepard, Jr., and Goodwin, Procter & Hoar, Boston, Mass., were on the brief, for appellees.

Before HARTIGAN and ALDRICH, Circuit Judges, and CAFFREY, District Judge.

CAFFREY, District Judge.

This is an appeal from a judgment entered by the district court for the District

of Massachusetts granting a motion for summary judgment filed by two individual defendants, Charles J. Gotthardt and Nathaniel Frothingham. This case is related to a breach of warranty action brought in the United States District Court for the District of New Hampshire, and which has been before this court on two prior occasions, (1) on jurisdictional issues, W. H. Elliott & Sons Co., Inc. v. Nuodex Products Co., Inc., 1 Cir. 1957, 243 F.2d 116, cert. den. 355 U.S. 823, 78 S.Ct. 30, 2 L.Ed.2d 38; and (2) after a trial on the merits, W. H. Elliott & Sons Co., Inc. v. E. & F. King & Co., Incorporated, 1 Cir. 1961, 291 F.2d 79.

The instant litigation was filed in the district court shortly after Elliott had recovered a jury verdict in the amount of $145,500 against King in 1958 and prior to the decision of this court on appeal. The complaint recites that plaintiff recovered a judgment in New Hampshire for $145,500 and alleges that during the pendency of the litigation the assets of King Company available for satisfaction of this judgment were substantially reduced by conduct of the named defendants; that this conduct of the defendants, Gelston T. King, President, Treasurer and Director of King Company, Charles J. Gotthardt, Vice-President and Director of King Company, Francis P. Allen, Director of King Company, and Nathaniel Frothingham, Clerk of King Company, was a violation of their fiduciary obligations to creditors of the King Company; that certain of the conduct constituted a diversion by the individual defendants of a business opportunity from the King Company; that some amounted to a transfer of corporate assets of King Company for the purpose of putting them beyond the reach of creditors; and that all of the conduct complained of should be construed as a sham and set aside, and the individual defendants required to account to plaintiff for said diversion of property, business opportunity, and prof-

its, to the extent that any of these transactions have prejudiced plaintiff's ability to satisfy its claim against the King Company.

The court below granted summary judgment in favor of defendants Gotthardt and Frothingham, on the basis of the pleadings and sworn affidavits and supporting documents filed with the motion for summary judgment.

■ 1. As to the defendant Nathaniel Frothingham, it appears that his affiliation with the King Company was as assistant to the general manager of the paint and putty division from 1951 to 1957, and as sales manager of that division thereafter until December 1, 1958. He was clerk of the corporation from 1955 to April 8, 1959. The Massachusetts cases with regard to the liability of corporate directors and officers to creditors for breach of their fiduciary obligations to creditors, or to the corporation itself, make it clear that the court has imposed liability only on corporate directors and major corporate officers. Frothingham's affidavit, to the effect that he was not active in or consulted on corporate policy matters stands unchallenged. It is clear that as clerk he was not the kind of corporate officer described by the Supreme Judicial Court. See Durfee v. Durfee & Canning, Inc., 323 Mass. 187, 80 N.E.2d 522; Burke v. Marlboro Awning Co., 330 Mass. 294, 113 N.E.2d 222; Allied Freightways v. Cholfin, 325 Mass. 630, 91 N.E.2d 765; Spiegel v. Beacon Participations, Inc., 297 Mass. 398, 8 N.E.2d 895. Nor is he liable under G.L. c. 156, secs. 36, 37. His motion for summary judgment was properly granted.

■ 2. (a) As to the defendant Charles J. Gotthardt, it appears that he became an employee of the King Company on March 1, 1950, and subsequently became a vice-president and director.* He resigned both positions on December 1, 1958, and left King Company to become

---

\* The record does not show the date he assumed either office, but the affidavit of Gelston T. King states that he held these corporate offices at all times material herein up to December 1, 1958.

an employee of the Wilbur & Williams Company, Inc. It appears that during the entire period Gotthardt was general manager of the paint and putty division of King Company and that he was in charge of the company's entire operation, including the chemical division, in Mr. King's absence. Gelston T. King has been president of the King Company since 1933 and served for many years as treasurer and director, until January 1961, when he resigned as president and treasurer and was elected chairman of the board of directors.

Plaintiff complains of two transactions engaged in by defendants subsequent to the commencement of the litigation in New Hampshire in 1954. The first was the creation of a corporation called Pleasant Street Industries, Inc. (P.S.I.) This corporation was formed in 1955 to take title to a tract of land adjoining real estate owned by King Company in Norwood, Massachusetts. Plaintiff says this corporation was organized solely for the purpose of diverting a business opportunity from King Company, and the record indicates that a trier of the facts might well so find. The district court, however, dismissed this transaction, ruling that "under the law of Massachusetts the acquisition of property, to constitute an interference with a corporate opportunity, 'must be not only within the corporate purpose but also highly desirable if not absolutely necessary to the furtherance of that purpose,'" citing Durfee v. Durfee & Canning, Inc., 323 Mass. 187, 198, 80 N.E.2d 522 (1948). We do not read Durfee as so holding. The language quoted by the court below as the law of Massachusetts was simply part of an historical recitation by the court of what had been held in other jurisdictions. The court gave its approval to a quite different view, saying, 323 Mass. 187, at 198–99, 80 N.E.2d 522, at 528:

"In Guth v. Loft, Inc., 23 Del.Ch. 255, 270, 5 A.2d 503, 510, the court held that determination of the issue of breach of duty should be made from a consideration of all the circumstances of the transactions, saying in discussing the universally accepted rule that corporate officers and directors are not permitted to use their position of trust and confidence to further their private interests, 'The standard of loyalty is measured by no fixed scale. If an officer or director of a corporation, in violation of his duty as such, acquires gain or advantage for himself, the law charges the interest so acquired with a trust for the benefit of the corporation, at its election, while it denies to the betrayer all benefit and profit. The rule, inveterate and uncompromising in its rigidity, does not rest upon the narrow ground of injury or damage to the corporation resulting from a betrayal of confidence, but upon a broader foundation of a wise public policy that, for the purpose of removing all temptation, extinguishes all possibility of profit flowing from a breach of the confidence imposed by the fiduciary relation. Given the relation between the parties, a certain result follows; and a constructive trust is the remedial device through which precedence of self is compelled to give way to the stern demands of loyalty.' That of course is our settled law."

Under the test adopted by the Supreme Judicial Court from the Guth case, the P.S.I. transaction could be found to be a corporate opportunity diverted from King Company.

The court below also stated that King Company was not in the real estate business and did not have the necessary cash to purchase this land. Not only is this statement contradicted to some extent by the deposition of Gelston T. King, but the Supreme Judicial Court has made it clear that financial inability of a corporation would be no defense to directors in any event, saying, with regard to a similar contention, in the Durfee case, 323 Mass. at p. 202, 80 N.E.2d at p. 530:

"These circumstances (lack of funds) did not relieve the defendant

of his fiduciary obligation to Durfee & Canning," citing Irving Trust Co. v. Deutsch, 2 Cir., 73 F.2d 121, 124, "If the directors are uncertain whether the corporation can make the necessary outlays, they need not embark it upon the venture; if they do, they may not substitute themselves for the corporation any place along the line and divert possible benefits into their own pockets."

The observation that the King Company was not in the real estate business is not controlling. The record indicates that King Company did need additional warehouse space for its ordinary business operations; that such a warehouse and room for additional warehouse space existed on the abutting 6.1 acre tract; that this could have been bought by the company in 1955 for $45,000; that King Company "leased" the existing warehouse on this property from P.S.I. shortly after the creation of P.S.I. at a rental of $300.00 per month; that by 1958 P.S.I. had recovered $48,500 for portions of the land purchased for it in 1955 for $45,000, while it continued to retain the original warehouse which it made available to King Company on a lease basis; and that King Company at least up until the time of the taking of King's deposition was using a portion of said tract.

During the years 1957 and 1958, while he was a director and ostensible full-time employee of King Company, Gotthardt likewise received $6,000 in salary from P.S.I. It cannot be ruled as a matter of law that this record presents no fact question as to whether or not Gotthardt, as a director of King Company, knowingly participated in the diversion from King Company of a corporate opportunity in connection with the creation of P.S.I. and in his taking employment therefrom for which he may be responsible to the creditors of King Company.

█ 2. (b) The second transaction complained of by plaintiff is the transfer through lease and sale of the paint and putty division of King Company to Wilbur & Williams Company, Inc. The record indicates that in October 1958 a new corporation, Wilbur & Williams Company, Inc., was formed with $1,000 capital; that this corporation was formed, according to the affidavit of Gotthardt, "as a vehicle by which Mr. Frothingham and I could be offered a share in the equity of the paint operations;" that Gotthardt and Frothingham became officers, directors, and stockholders therein; that between them they owned a 40 per cent stock interest in the new corporation and that each of them received a salary from Wilbur & Williams substantially higher than each had received from King Company; that Wilbur & Williams purchased a 2.06 acre tract from P.S.I. upon which it built a warehouse for the needs of the paint and putty operation; that the transfer of the division was made without appraisal of either the inventories, machinery, or buildings; that no attempt was made to interest any purchaser other than Wilbur & Williams; and that the sale of the finished goods inventory and raw materials inventory for paint and putty appears to be below book carrying costs.

It cannot be ruled that the transfer by King Company to a newly organized corporation, thinly financed with $1,000 capital and 40 per cent of whose common stock was owned by Gotthardt and Frothingham, did not involve a possible violation of the fiduciary relation of the director Gotthardt. We believe this is a question of fact.

█ There is no merit in defendants' contention that plaintiff is precluded from recovery by collateral estoppel resulting from failure of plaintiff to take a timely appeal from the entry of summary judgment herein in favor of the defendant Wilbur & Williams Company, Inc. in 1959. None of the cases cited by defendants in support of this contention involve the liability of corporate directors save the case of Eissing Chemical Co. v. Peoples National Bank, 205 App.Div. 89, 199 N.Y.S. 342 (1923), which is clearly distinguishable since the first case in-

volved therein resulted in a finding, after a trial on the merits, that the defendant-director had not breached his fiduciary obligation to the plaintiff corporation.

The law of Massachusetts is that a corporate director may be liable in situations wherein third parties are not liable. American Agricultural Chemical Co. of Massachusetts v. Robertson, 273 Mass. 66, 85, 172 N.E. 871; Durfee, supra, 323 Mass. at 196, 80 N.E.2d 522.

Judgment will be entered affirming the judgment entered in favor of Nathaniel Frothingham and vacating the judgment entered in favor of Charles J. Gotthardt; no costs on appeal.